ALIAS SMITH & JONES, INC., d/b/a Pumpkin's Finger, and Hannibal Hayes and Kid Curry, Inc., Plaintiffs-Appellants,

v.

J. Richard BARNES, Individually and as Commissioner of Insurance of the State of Colorado, Defendant-Appellee.

No. 83CA1122.

Colorado Court of Appeals, Div. I.

Dec. 20, 1984.

Tague & Beem, P.C., Clifford L. Beem, Denver, for plaintiffs-appellants.

Hall & Evans, John R. Trigg, Denver, for defendant-appellee.

TURSI, Judge.

In this action challenging certain actions taken by defendant commissioner of insurance, J. Richard Barnes, the trial court entered summary judgment for defendant, and plaintiffs appeal. We affirm.

The plaintiff, Alias Smith & Jones, Inc., operated a restaurant called Pumpkin's Finger in Pueblo, Colorado, on property leased from plaintiff Hannibal Hayes & Kid Curry, Inc. The restaurant was insured by Manufacturers and Wholesalers Indemnity Exchange (M & W), an interinsurance exchange. *See* § 10–13–101, et seq., C.R.S.1973.

On November 11, 1974, the commissioner ordered the division of insurance to conduct an examination of M & W because of concerns he had regarding the company's financial condition. Plaintiffs obtained a fire

and personal property insurance policy from M & W on December 16, 1974. On January 14, 1975, the commissioner entered a determination of delinquency order and imposed a conservatorship upon M & W for the purpose of rehabilitating the company. M & W was allowed to continue in business but was ordered to discontinue issuing new policies to avoid future losses. On April 1, 1975, the commissioner renewed M & W's certificate of authority.

On May 25, 1975, the restaurant was destroyed by fire. M & W was unable to pay the insurance claim on the destroyed restaurant because it was insolvent. On December 1, 1975, the commissioner placed M & W into receivership because the rehabilitation efforts were unsuccessful.

Thereafter, plaintiffs initiated this action claiming that on April 1, 1975, when the commissioner renewed M & W's certificate of authority to transact business in Colorado, he knew that M & W was insolvent and that it had not met the statutory requirements necessary for the issuance of the certificate. Plaintiffs argue that the commissioner did not have the discretion to renew the certificate of authority, and in an absence of such discretion, the commissioner was not protected by official immunity.

In granting summary judgment, the trial court found that the commissioner was acting within the scope of his official duties in attempting the rehabilitation of M & W. The court concluded that the decision whether to rehabilitate or liquidate M & W was discretionary as a matter of law and, thus, the commissioner was protected by official immunity. We agree with the trial court.

Plaintiffs admit that the commissioner acted within his lawful discretion in attempting to rehabilitate M & W pursuant to § 10–3–401, et seq., C.R.S., instead of revoking and suspending the company as authorized by § 10–13–111, C.R.S. Plaintiffs' sole contention on appeal is that the commissioner of insurance has no discretion under § 10–13–106(1) to issue a new annual certificate of authority to an interinsurance exchange which no longer meets the unencumbered surplus requirement for original certification set out in § 10–13–106(2), C.R.S. Plaintiffs argue since the statutes regulating interinsurance exchanges are more restrictive than the statutes regulating other insurance companies, the commissioner of insurance has less discretion in determining if an interinsurance exchange qualifies for renewal of its certification.

Interinsurance exchanges are governed by § 10–13–101, et seq., C.R.S. This article sets forth requirements for the issuance of a certificate of authority (§ 10–13–106, C.R.S.), including required reserves (§ 10–13–107, C.R.S.) annual certification and revocation (§ 10–13–111, C.R.S.), and provisions for filing fees (§ 10–13–112, C.R.S.). Section 10–13–114, C.R.S., states:

"Except as they may be inconsistent with the provisions of this article, all other provisions of this title shall apply to interinsurance and reciprocal exchanges."

The authority for the commissioner of insurance to take remedial action against any insurance company on account of delinquencies is found in § 10–3–401, C.R.S. which reads:

"(1) The purpose of this part 4 is to make available to the commissioner supplemental remedial authority in instances of insurance company delinquencies of various kinds and degrees which demand regulation and control by the commissioner in order to effectuate his responsibility that the business of insurance in this state is conducted according to law and his responsibility to protect the policyholders and public of this state. Most delinquencies are of such a kind or degree as to not justify the imposing of the remedy or sanction of loss of certificate or of receivership by court order. Either of the remedies of loss of certificate or of receivership by court order would in many instances defeat any realistic opportunity to rehabilitate the delinquent company. . . .

(2) . . . The remedial steps provided by this part 4 are provided with the purpose in mind that insurance companies com-

mitting or suffering a delinquency be rehabilitated where and whenever possible with no loss of public confidence in the companies, and thus avoid the loss of a certificate of or the institution of receivership proceedings against any insurance company, where possible. Furthermore, the remedial steps provided in this part 4 are provided to protect the assets of an insurer pending determination of whether or not the insurer can be successfully rehabilitated."

Section 10-3-403, C.R.S., provides that the commissioner of insurance "may elect to take action against any insurance company formed or incorporated under the laws of this state or doing business in this state, whether authorized or not, which commits or suffers a delinquency according to the provisions of this part 4." An "insurance company" is defined in § 10-1-102(4) as including "all corporations, associations, partnerships, or individuals engaged as insurers in the business of insurance or suretyship except fraternal or benevolent orders and societies."

■ We conclude that an interinsurance exchange is included in the definition of insurance company in § 10-1-102(4). We find no inconsistency in applying to interinsurance exchanges the provisions granting the commissioner general authority to attempt rehabilitation of any delinquent insurance company. The commissioner may attempt to rehabilitate a delinquent interinsurance exchange in the same manner as any other insurance company under § 10-3-401, et seq.

Plaintiffs argue, however, that there is an inconsistency between the annual renewal requirements for an interinsurance exchange as opposed to any other insurance company. They point out that there is no automatic annual certificate renewal provision for interinsurance exchanges in § 10-13-106(1), C.R.S., as there is for other insurance companies in § 10-3-105(1), C.R.S. Therefore, they contend that the commissioner does not have discretion to renew an interinsurance exchange's annual certificate of authority where the company no longer meets the statutory requirements for authority to transact business contained in § 10-13-106(2), C.R.S.

■ We are not persuaded that the absence of an automatic renewal provision for interinsurance companies in § 10-13-106(1) prevents the commissioner from renewing the certificate when the unencumbered surplus of an interinsurance exchange falls below the $300,000 requirement of § 10-13-106(2). All the statutes in Title 10 are intended to be part of a uniform system of regulating the insurance industry in this state and should be construed in *pari materia*. *See People v. Gibson*, 53 Colo. 231, 125 P. 531 (1912). Statutes must be construed as a whole to give reasonable effect to the legislative intent evidenced by the entire statutory scheme. *Public Employees' Retirement Ass'n v. Greene*, 195 Colo. 575, 580 P.2d 385 (1978).

■ Where an interinsurance exchange fails to comply with any of the statutory provisions of Title 10, the commissioner is not automatically required to revoke its certificate of authority. Section 10-13-111, C.R.S., reads in part: "The commissioner *may* revoke or suspend any certificate of authority issued in case of breach of any of the conditions imposed by this title ...." (emphasis added) The commissioner has discretion to pursue other avenues of recourse found in § 10-3-401, et seq., which include rehabilitation, conservatorship, direct supervision, and delinquency. These provisions are made applicable to interinsurance exchanges by § 10-13-114, C.R.S.

■ Thus, we hold it is not beyond the discretionary authority of the commissioner to renew the annual certificate of an interinsurance exchange while the company is undergoing rehabilitation under § 10-3-401, et seq., even though it does not maintain an unencumbered surplus in an amount of $300,000 or more. Since we conclude that the commissioner acted within his lawful discretion in reissuing M & W's certificate of authority while the company was undergoing rehabilitation, he was

thereby protected by the doctrine of official immunity.

A public official is immune from liability for acts which are discretionary in nature. *Cooper v. Hollis,* 42 Colo.App. 505, 600 P.2d 109 (1979). Discretionary acts are those which are of a judgmental, planning, or policy nature; nondiscretionary acts are those that involve performance of a mandatory duty at the operational level. *Winters v. City of Commerce City,* 648 P.2d 175 (Colo.App.1982). The acts of the commissioner in attempting to rehabilitate M & W and in reissuing its certificate of authority during the rehabilitation period are clearly judgmental and thus discretionary in nature.

Accordingly, the judgment is affirmed.

PIERCE and SMITH, JJ., concur.