John M. HATCHER, as Trustee of Whitley County Memorial Hospital Retirement Plan, Appellant–Plaintiff,

v.

Dale HAUPERT and John Mortell, as Commissioner of the Indiana Department of Insurance, Appellees–Defendants.

No. 49A02–9412–CV–726.

Court of Appeals of Indiana.

Sept. 25, 1995.

Thomas R. Lemon, Michael E. Armey, Lemon, Armey, Hearn & Leininger, Warsaw, for appellant.

James P. Posey, Fort Wayne, for Dale Haupert. Pamela Carter, Attorney General of Indiana.

Annette S. Biesecker, Terry Duga, Deputy Attorneys General, Indianapolis, for appellees.

## OPINION

KIRSCH, Judge.

John M. Hatcher is the Trustee of the Whitley County Memorial Hospital Retirement Plan. In May 1986 the Retirement Plan purchased a single premium annuity contract (the Annuity) issued by Mutual Security Life Insurance Company (Mutual Life). The Annuity listed one employee of the Hospital as the annuitant. Dale Haupert acted as an agent for the Retirement Plan when the Annuity was purchased.

Upon petition of the Commissioner of the Indiana Department of Insurance, Mutual Life was declared insolvent and ordered liquidated by the Marion Circuit Court. The Indiana Life and Health Insurance Guaranty Association (the Guaranty Association) is a

nonprofit legal entity composed of all insurers who transact insurance in Indiana. Subject to the approval of the Commissioner, the Guaranty Association guarantees the covered insurance policies of an insolvent insurer, assures payment of an insolvent insurer's contractual obligations and provides the necessary means to discharge those obligations. State law limits the Guaranty Association's liability for contractual obligations of an insolvent insurer to one-hundred thousand dollars in cash value, with respect to any one life. IC 27–8–8–5(*l*) (1993 Ed.).

On August 7, 1992, Hatcher was notified that the Guaranty Association interpreted IC 27–8–8–5(*l*) as limiting its guarantee of the Annuity to $100,000 because the Annuity had a single annuitant, although the Retirement Plan had a large group of members. This interpretation of the statutory limitation substantially reduced the value of the Annuity.[1]

Hatcher sued Haupert and the Commissioner in the liquidation proceeding. In Count 1 of his three-count complaint, Hatcher alleged that Haupert breached his duty to the Retirement Plan by failing to inform Hatcher, as trustee of the Plan, that Mutual Life was in serious financial trouble; in Count 2 of that complaint Hatcher alleged that Haupert breached his duty to the Plan by recommending that it purchase the Annuity in the name of a single natural person; and, in Count 3, Hatcher alleged that the Commissioner breached his duty to the Plan, as a policyholder, by failing to place Mutual Life in liquidation earlier.

Haupert and the Commissioner moved to dismiss Hatcher's complaint, alleging that suit was brought after the statutory limitation period had expired. The Commissioner also alleged that Hatcher's claim was barred by Hatcher's failure to file a timely notice of tort claim and by several statutory immunities barring a tort suit against a government defendant. The trial court granted the motions to dismiss and Hatcher appeals.

We affirm in part and reverse in part.

## ISSUES

Hatcher raises the following issues, which we have consolidated and restated as:

1. Whether Hatcher's claim against Haupert as stated in Count 1 of the Complaint is barred by the statute of limitations?

2. Whether Hatcher's claim against Haupert as stated in Count 2 of the Complaint is barred by the statute of limitations?

3. Whether Hatcher's claim against the Commissioner is barred by the doctrine of governmental immunity?

## DISCUSSION AND DECISION

### Issue One: Hatcher's Count 1 claim against Haupert

In Count 1 Hatcher alleged that "Mr. Haupert breached his duty to the Retirement Plan by failing to inform [Hatcher] that [Mutual Life] was in serious financial trouble." *Record* at 4. Haupert moved to dismiss Hatcher's claim because suit was not filed before the statute of limitations had expired. All parties agree that the applicable statute of limitations is IC 34–1–2–2(1), with a two-year limitation period. Hatcher filed his complaint against Haupert and the Commissioner on March 15, 1994; therefore, if Hatcher's cause of action accrued before March 16, 1992 the statute of limitations had expired and his claim is barred.

Our supreme court has held that "the cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as the result of the tortious act of another." *Wehling v. Citizens Nat'l Bank* (1992), Ind., 586 N.E.2d 840, 843. The Commissioner's filing of the rehabilitation action against Mutual Life on October 5, 1990 provided notice that Mutual Life was in serious financial trouble, and Hatcher admits that he had knowledge of the rehabilitation proceedings. With that knowledge Hatcher could discover, through the exercise of ordinary diligence, that Haupert's alleged negli-

---

1. Whether IC 27–8–8–5(*l*) actually limits the Guaranty Association's liability for the Annuity to $100,000 is the subject of a separate lawsuit.

For the purposes of this appeal, we assume that Hatcher's allegations about the Guaranty Association's liability limitations are correct.

gent act of failing to inform Hatcher of Mutual Life's financial troubles would result in damage to the Retirement Plan. Once Haupert's alleged negligence and resulting damage were susceptible of ascertainment by Hatcher, the limitation period began to run. *See Page v. Hines* (1992), Ind.App., 594 N.E.2d 485, 487. The trial court properly dismissed Count 1 of Hatcher's Complaint.

### Issue Two: Hatcher's Count 2 claim against Haupert

■ In Count 2 Hatcher alleged that Haupert breached his duty to exercise reasonable care, skill, and good faith diligence in advising the Retirement Plan. Hatcher alleged Haupert breached this duty when he recommended that the Retirement Plan purchase the Annuity on behalf of the many people who were members of the Retirement Plan in the name of only one person. *Record* at 5. The purchase of the Annuity in the name of a single annuitant, according to Hatcher, limited its cash value to $100,000 upon the liquidation of Mutual Life, resulting in damages to the Retirement Plan.

As above, if Hatcher's Count 2 claim against Haupert accrued before March 16, 1992, then it is barred by the statute of limitations; if the claim accrued after that date, then it is not so barred. Hatcher was first notified on August 7, 1992, that the Annuity would be subject to the $100,000 limitation; nothing in the record establishes that Hatcher could have discovered that the Retirement Plan had been injured through Haupert's alleged negligence prior to such date. Hatcher brought suit within two years of that date, and the trial court erred in dismissing that Count.

### Issue Three: Hatcher's claim against the Commissioner

■ Hatcher claims that the Commissioner did not prevent the failure of Mutual Life and he did not act quickly enough in placing Mutual Life in liquidation to preserve the greater part of its assets. *Record* at 5. The Commissioner argues that Hatcher's claim is barred by the running of the statute of limitations, by Hatcher's failure to file a timely notice of tort claim and by several statutory governmental immunities. Because we find that Hatcher's claim against the Commissioner is barred by the governmental immunity for discretionary functions, we do not reach the other defenses raised by the Commissioner.

The immunities section of the Indiana Tort Claims Act provides in part that: "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from ... the performance of a discretionary function...." IC 34–4–16.5–3 (1993 Ed.). Our supreme court has identified the policy underlying governmental immunity for discretionary functions as "the fundamental idea that certain kinds of executive branch decisions should not be subject to judicial review." *Peavler v. Monroe County Bd. of Commissioners* (1988), Ind., 528 N.E.2d 40, 44. The Court continued:

> "The separation of powers doctrine forecloses the courts from reviewing political, social and economic actions within the province of coordinate branches of government. In this way, the discretionary function exception articulates 'a policy of preventing tort actions from becoming a vehicle for judicial interference with decision-making that is properly exercised by other branches of the government....'
>
> "Governmental immunity for discretionary functions also avoids inhibiting the effective and efficient performance of governmental duties. Policy-making activities lie at the heart of governance and such essential acts should not be subject to judicial second-guessing or harassment by the actual or potential threat of liability litigation. Tort immunity for basic planning and policy-making functions is necessary to avoid the chilling effect on the ability of the government to deal effectively with difficult policy issues which it confronts daily."

*Id.* (quoting *Blessing v. United States* (E.D.Penn.1978), 447 F.Supp. 1160, 1170). Whether a particular governmental activity is an immune discretionary function is a question of law for the court's determination. *Id.*

In *Peavler,* the Court provided a list of factors to consider when determining whether the governmental function which is the

basis of the tort claim is of the type intended to benefit from the discretionary function immunity. Factors which the Court held point toward immunity in most cases, include:

"1. The nature of the conduct—

a) Whether the conduct has a regulatory objective;

b) Whether the conduct involved the balancing of factors without reliance on a readily ascertainable rule or standard;

c) Whether the conduct requires a judgment based upon policy decisions;

d) Whether the decision involved adopting general principles or only applying them;

e) Whether the conduct involved establishment of plans, specifications and schedule; and

f) Whether the decision involved assessing priorities, weighing of budgetary considerations or allocation of resources.

2. The effect on governmental operations—

a) Whether the decision affects the feasibility or practicability of a governmental program; and

b) Whether liability will affect the effective administration of the function in question.

3. The capacity of the court to evaluate the propriety of the government's action—

Whether tort standards offer an insufficient evaluation of the plaintiff's claim."

*Id.*

Hatcher has identified no actions of the Commissioner which might have prevented the damage of which he now complains, other than the Commissioner's exercise of his regulatory power through seeking an earlier rehabilitation or liquidation of Mutual Life. Decisions as to whether and when to seek rehabilitation or liquidation of an insurer are an integral part of the Commissioner's regulation of the insurance industry. The power to make those decisions is entrusted to the Commissioner in terms which require him to consider and balance the risks and benefits of his actions to the public, the insurance industry, the insurer's creditors and its policyholders without relying upon readily ascertainable rules or standards to apply in exercising his authority. *See* IC 27–9–3–1, –5 (1993 Ed.).

The wide discretion granted to the Commissioner in his regulation of the insurance industry implies that our General Assembly did not intend to make the Commissioner a guarantor of the activity which is subject to his inspection and regulation. Nor is there a sound policy basis for requiring that the Commissioner's attempts to protect the insurance industry, its policyholders and the public be subject to litigation by those who disagree, after the fact, with the Commissioner's decisions. We conclude, therefore, that the Commissioner's alleged acts of negligence complained of by Hatcher fall within the governmental immunity for discretionary functions, and that the trial court properly dismissed Count 3 of Hatcher's Complaint.

Affirmed in part and reversed in part.

CHEZEM and DARDEN, JJ., concur.