928 P.2d 673

**Andrew C. WARRINGTON, a minor, by his next friend and natural father, Steven M. WARRINGTON; Steven M. Warrington and Jennie J. Warrington, husband and wife, Plaintiffs–Appellants,**

v.

**TEMPE ELEMENTARY SCHOOL DISTRICT NO. 3, Defendant– Appellee.**

**No. 1 CA–CV 95–0374.**

Court of Appeals of Arizona, Division 1, Department B.

May 28, 1996.

Review Denied Dec. 17, 1996.

Cunningham Law Firm by James P. Cunningham, Phoenix, for Plaintiffs–Appellants.

Teilborg, Sanders & Parks, P.C. by Bradley R. Jardine, Melinda K. Cekander, Phoenix, for Defendant–Appellee.

## OPINION

NOYES, Judge.

The trial court granted summary judgment to Appellee Tempe Elementary School District No. 3 ("the District"), holding that it had absolute immunity from Appellants' claim that the District negligently placed a school bus stop in a location dangerous for young children. We conclude that the District does not have absolute immunity from Appellants' claim.

### I

On February 10, 1993, a District school bus dropped off seven-year-old Andrew Warrington near the intersection of 41st Street and Southern Avenue, the bus stop established by the District for children living in Appellants' subdivision. Southern Avenue at this location is heavily travelled, with traffic at speeds in excess of forty-five miles per hour. While walking home along Southern Avenue, Andrew ran into the street and was hit by an automobile and seriously injured.

This lawsuit, summary judgment, and appeal followed. We have jurisdiction of the appeal pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(B) (1994). We view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the party opposing the motion for summary judgment. *Bishop*

*v. State, Dep't of Corrections,* 172 Ariz. 472, 475, 837 P.2d 1207, 1210 (App.1992). We review *de novo* the legal issue of whether the District has absolute immunity. *Pioneer Annuity Life Ins. Co. v. Rich,* 179 Ariz. 462, 464, 880 P.2d 682, 684 (App.1994).

## II

In 1963 the Arizona Supreme Court abolished the substantive defense of sovereign immunity. *Stone v. Arizona Highway Comm'n,* 93 Ariz. 384, 392, 381 P.2d 107, 112 (1963). The court rejected the notion that sovereign immunity had become so entrenched that its abolition should be done by the legislature, if at all:

> [T]he doctrine of sovereign immunity was originally judicially created. We are now convinced that a court-made rule, when unjust or outmoded, does not necessarily become with age invulnerable to judicial attack. This doctrine having been engrafted upon Arizona law by judicial enunciation may properly be changed or abrogated by the same process.

*Id.* at 393, 381 P.2d at 113. In 1982 the supreme court reaffirmed Arizona's public policy that " 'where negligence is the proximate cause of injury, the rule is liability and immunity is the exception.' " *Ryan v. State,* 134 Ariz. 308, 309, 656 P.2d 597, 598 (1982) (quoting *Stone,* 93 Ariz. at 392, 381 P.2d at 112). The court stated that governmental immunity should be applied only where "necessary to avoid a severe hampering of a governmental function or thwarting of established public policy. Otherwise, the state and its agents will·be subject to the same tort law as private citizens." *Ryan,* 134 Ariz. at 311, 656 P.2d at 600.

In 1984 the Arizona legislature reaffirmed and codified *Ryan's* public policy pronouncement by enacting A.R.S. sections 12–820 through 12–826, entitled "Actions Against Public Entities or Public Employees." The legislature prefaced the Act with this statement of purpose and intent:

> The legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand, the legislature recognizes that, while a private entrepreneur may readily be held liable for negligence within the chosen scope of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. *Consequently, it is hereby declared to be the public policy of this state that public entities are liable for acts and omissions of employees in accordance with the statutes and common law of this state.* All of the provisions of this act should be construed with a view to carry out the above legislative purpose.

1984 Ariz. Sess. Laws ch. 285, § 1 (emphasis added), *cited in* A.R.S. § 12–820 (1992) (historical note).

It is well settled, therefore, that governmental liability is the rule in Arizona, unless an exception is established by statute or caselaw. The exception invoked by the District in this case is A.R.S. section 12–820.01 (1992), which provides:

> A. A public entity shall not be liable for acts and omissions of its employees constituting:
>
> . . . .
>
> 2. The exercise of an administrative function involving the determination of fundamental governmental policy.
>
> B. The determination of a fundamental governmental policy involves the exercise of discretion and shall include, but is not limited to:
>
> 1. A determination of whether to seek or whether to provide the resources necessary for:
>
> . . . .
>
> (d) The provision of governmental services.
>
> 2. A determination of whether and how to spend existing resources, including those allocated for equipment, facilities and personnel. . . .

A "public entity" for purposes of statutory immunity includes the state and any political subdivision of the state. A.R.S. § 12–820(6) (Supp.1995). A school district is a political subdivision. *Amphitheater Uni-*

*fied Sch. Dist. v. Harte*, 128 Ariz. 233, 234, 624 P.2d 1281, 1282 (1981). Under A.R.S. section 12–820.01, therefore, the District assuredly has absolute immunity for certain functions. The question here is whether the District has absolute immunity for placement of a school bus stop. The answer is "yes" only if placement of a school bus stop involves "the determination of a fundamental governmental policy," as defined by section 12–820.01(B). The trial court concluded that it did:

> It is the Court's conclusion, as in *McNees v. Scholley*, [46 Mich.App. 702, 208 N.W.2d 643 (1973)], that the laying out of school bus routes for travel and designating bus stops to pick up and discharge students is an essential exercise of the government function of education in providing transportation for students to attend school and is a decision of whether to provide necessary resources for the provision of government services and a determination of how to spend them. Thus, the acts complained of in this case are immune from suit pursuant to A.R.S. § 12–820.01....

■ We can highlight what we perceive to be the error in the trial court's conclusion by discussing *McNees v. Scholley*, on which the trial court relied. In *McNees*, a nine-year-old child got off a school bus at its designated stop and was hit by a car while walking home. 208 N.W.2d at 644. The lawsuit claimed that the school district was negligent in designating an unsafe place as a school bus stop. *Id.* 208 N.W.2d at 645. The trial court granted summary judgment to the school district, and the court of appeals affirmed. *Id.* 208 N.W.2d at 644–46. In Michigan, however, school districts have absolute immunity "when engaged in a governmental function," and the *McNees* court found that designating school bus stops "is an essential exercise of the governmental function of education." *Id.* 208 N.W.2d at 646. Although the *McNees* facts are very similar to Appellants' facts, the applicable law is very different: in Arizona, liability is the rule and immunity the exception; in Michigan, immunity is the rule "except to the extent that such immunity has been abrogated by legislation." *Id.* We can agree with *McNees*, and with the

trial court, that designation of school bus stops is an essential governmental function; however, we do not agree that this function involves "the determination of fundamental governmental policy" so as to qualify for absolute immunity in Arizona. *See* A.R.S. § 12–820.01(A). Placement of the school bus stop in this case did not involve District policy decisions on whether to provide transportation services, how to spend money, or how to allocate resources; it involved one employee's decision whether to place a bus stop at one point or another. This is an operational decision, not a fundamental policy decision.

■ In implementing the purpose and intent of the Arizona immunity statutes, we find it helpful to consider whether the function in question was at the policy level or the operational level of the public entity. We recently utilized this distinction in *Evenstad v. State*, 178 Ariz. 578, 582, 875 P.2d, 811, 815 (App.1993):

> Operational level acts concern routine, everyday matters. They do not require evaluation of broad policy factors. *Rogers v. State*, 51 Haw. 293, 459 P.2d 378, 381 (1969) (matters such as kinds of road signs to place and where to place them and which center lines to repaint involved decisions made in every-day governmental operations). The routine issuance of a driver's license by an MVD employee falls within this definition of operational level acts because it involves a normal, everyday function.

An Indiana court of appeals case employed a similar analysis, but used "planning" rather than "policy":

> In determining whether governmental acts are discretionary and therefore immune from liability, we employ the "planning-operational" standard. Planning functions are discretionary and are therefore shielded by immunity, while operational functions are not. Planning functions involve the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices. Operational functions are charac-

terized by the execution or implementation of previously formulated policy.

*Hanson v. Vigo County Bd. of Comm'rs,* 659 N.E.2d 1123, 1125–26 (Ind.App.1996) (citations omitted). Another recent case using the "planning-operational" analysis is *Gutbrod v. County of Hennepin,* 529 N.W.2d 720 (Minn.App.1995), which stated: "Planning level decisions are protected, and involve questions of public policy and the balancing of competing policy objectives. Unprotected, operational level decisions relate 'to the ordinary day-to-day operations of the government' and involve the exercise of scientific or professional judgment." *Id.* at 723 (citations omitted).

The trial court also relied on *Pletan v. Gaines,* 494 N.W.2d 38 (Minn.1992), and use of the "planning-operational" analysis will help explain why we find that reliance misplaced. In *Pletan,* a seven-year-old child, who ordinarily rode the school bus home, was hit by a car while walking home. *Id.* at 39. Plaintiffs sued the school district, claiming that the school was responsible "for seeing to it that students get on the right bus." *Id.* at 43. The school district claimed that it had immunity because the suit challenged a policy adopted by the district that children would be "personally responsible for boarding the appropriate bus." *Id.* at 40. The court found that:

> This claim [by plaintiffs] is basically a disagreement with the school district's policy which says boarding the proper bus is the students' personal responsibility and, therefore, is really an attempt to have the courts reexamine the policy considerations that entered into the school district's policy. Discretionary function immunity protects the school district from such reassessments.

*Id.* at 44.

Arizona law provides immunity for school district policy decisions such as the one at issue in *Pletan. See* A.R.S. § 12–820.01(B). Appellants' case, however, questions one school district employee's decision regarding one school bus stop. The question does not relate to a planning/policy decision; it relates to a day-to-day operational decision. *See Garrett v. Grant Sch. Dist. No. 124,* 139 Ill.App.3d 569, 93 Ill.Dec. 874, 878, 487

N.E.2d 699, 703 (1985) (school district has duty to establish safe bus stops).

The District's decision making regarding bus stop placement was the responsibility of Transportation Supervisor Fred Toth. He could and did decide to change bus stop locations, in the exercise of his discretion. Placement of bus stops was part of the day-to-day performance of Mr. Toth's job, i.e., the day-to-day operations of the District. As indicated in District records provided to the trial court by Appellants, Mr. Toth routinely changed bus stop locations in response to citizen input. For example, Mr. Toth's records reflect the following activity around the time of Andrew Warrington's injury: September 14, 1992—bus stop changed after complaint of property damage and litter; October 15, 1992—bus stop moved after complaint of property damage to an automobile; April 1, 1993—bus stop changed following complaint that dirty syringes were found at the bus stop; August 24, 1993—bus stop split after residents complained about vandalism and that current stop had too many children.

 Because one of Mr. Toth's duties was school bus stop placement, an operational function, he had a duty not to subject the District's students to a foreseeable and unreasonable risk of harm. *See Delbridge v. Maricopa County Community College Dist.,* 182 Ariz. 55, 58, 893 P.2d 55, 58 (App.1994); *Rogers ex rel. Standley v. Retrum,* 170 Ariz. 399, 401, 825 P.2d 20, 22 (App.1991); *see also Jesik v. Maricopa County Community College Dist.,* 125 Ariz. 543, 546, 611 P.2d 547, 550 (1980) ("A public school district in Arizona is liable for negligence when it fails to exercise ordinary care under the circumstances."). It remains to be seen whether Appellants can prove their claim; we merely hold that the District does not have absolute immunity from the claim.

### III

The judgment is reversed and the case is remanded for further trial court proceedings.

GRANT, P.J., and EHRLICH, J., concur.