935 P.2d 861

FIDELITY SECURITY LIFE INSURANCE COMPANY, 3130 Broadway, Kansas City, Mo. 64111, Plaintiff–Appellant,

v.

STATE of Arizona, and Arizona Department of Insurance, and Susan Gallinger, Director of Insurance of the State of Arizona, in her official capacity, Defendants–Appellees.

Darlene TODD; Norm Chiodras; Mike Scwartz; David Blaydes; Ken Small; Steve Mack; Dominick Davero; Jack Hyneman; Bob Boetto; Rob Fields; Nick Sansonnetti; Frank C. Tersar; Grace Amidon; Larry Anderson; Richard A. Anderson; Richard F. Anderson; Jean and Roberta Andre; Helen Barth; Julius Belcaster; Deborah Belvedere; Ervin and Ella Benda; Victor Berzin; Irene Blaho; Ernestine Burgett; Joanne E. Burkhardt; Betty Bybee; Dolores Campagna; Irene Chamales; Roger Clark; Daniel and Camille Clifford; Herbert and Evelyn Cline; Anna Countryman; Peter Dibenedetto; Eugene Dimarco; Margaret Dooley; Joan Dunn; Helen Eames; H. Joann East; Gary Elliott; Leonard Fialkowski; Ruth Field; Robert S. Field; M. Harvey Field; Henry Filipiak; David Froberg; Marjorie Gaynor; Mary Gebhardt; Roger Geiger; Alwin Giegler; Robert Genengels; Timothy Genengels; Neil Gertz; Alvin and Natalie Goldstein; Raymond and Viola Gonske; Virginia Gould; Andrea Greenhill; Janice L. Grotz; Elizabeth Hammack; Harold Hasse; Ilse Hasse; Daniel Hedeker; Lina Hedeker; Betty Heffner; Elizabeth Hess; Sylvia Hicks; Carleen Hilaszek; Mildred Holder; Deborah Hyneman; Florentine Hyneman; John G. Hyneman; Mark Hyneman; Linda Hyneman; Mary Ann Jancik; Steve Jendrzejewski; A. Karageorgis; Robert Karas; Lawrence Kocheny; Robert Kosmonas; Dolores Kufrin; Charles Kufrin; Raymond Krusinski; Phyllis Larson; Margaret Livingston; Grace Lorenz; Herbert Lorenz; Laura Mack; Eileen Maday; Olga Markovich; Wal-

ter Marszalek; Lorraine Marszalek; Raymond and Shirley Meyers; Everett Mick; George and Joyce Mikasen; Evalyn Mikes; Evelyn T. Millay; Joseph Mistretta; Mary Ann Muldoon; Robert Muldoon; Alvin Noster; Charles O'Donnell; Edward Orlowski; Robert and Velma Owens; Charles and Hertha Pacola; Mable Peebles; Raymond Pelletier; Mary Pettinger; Elvera Piecuch; Jean Priestman; Vernon Priestman; Robert Ralph; Jack Reyone; Joyce Richardson; Mary Ann Richardson; David Rogodzinski; Virginia Rogodzinski; Lorraine Rosenkranz; Ethelyn Rossen; Geraldine Rousek; Alan Russo; Robert Russow; Carroll Sand; Bernyce Schaffner; Waltraud Schmid; Erwin Schmid; Carole Schuett; Ralph Schuett; Audrey Semple; Ralph L. Sesko; Wallace Shapiro; Renee Shutan; William Skawinski; June Skutas; Valentine Smith; W.H. Roger Smith; Mary Joan Stentz; Paul Steuri; Joseph Storto; Carloss Stover; William Studlow; Richard and Marianne Thurson; Helen Tomasik; Seymour Weinberg; Marilyn Williams; Elsie Wirtanen; Powell and Winifred Wyman, Plaintiffs–Appellants,

v.

STATE of Arizona; Arizona Department of Insurance; Susan Gallinger, Director of Insurance of the State of Arizona, in her official capacity, Defendants–Appellees.

Donald W. NOREN, Plaintiff–Appellant,

v.

STATE of Arizona; Arizona Department of Insurance and Susan Gallinger, Director of Insurance, Defendants–Appellees.

Nos. 1 CA–CV 94–0179, 1 CA–CV 94–0266 and 1 CA–CV 94–0328.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 12, 1996.

As Amended Sept. 16, 1996.

Review Granted April 29, 1997.

Frederick C. Berry, Phoenix, and Shughart Thomson & Kilroy by John S. Conner, Kansas City, MO, and Richard L. Strohm, Phoenix, and George T. Drost & Associates by Thomas W. Kivlahan, Arlington Heights, IL, for Plaintiffs–Appellants.

Grant Woods, Attorney General by Raymond P. Lee, Assistant Attorney General, Phoenix, for Defendants–Appellees.

## OPINION

VOSS, Presiding Judge.

This is a consolidated appeal from three separate cases filed in Maricopa County Superior Court.

Appellants each filed a complaint against the State of Arizona, the Arizona Department of Insurance, and Susan Gallinger, Director of Insurance of the State of Arizona, alleging that each appellee failed to properly supervise and regulate AMS Life Insurance Company (AMS). Specifically, appellants allege that appellees approved an application submitted by AMS to redomesticate to Arizona at a time when appellees knew AMS was not qualified to write insurance under the laws of Arizona; that appellees approved AMS's annual request for renewal of its certificate of authority when AMS did not meet Arizona's statutory requirements; and that appellees were grossly negligent in licensing and regulating AMS. Appellants further contend that these failures caused them economic harm when AMS went into receivership.

In each of the three actions, the trial court granted appellees' motion to dismiss for failure to state a claim on the ground that appellees were entitled to absolute immunity under Arizona Revised Statutes Annotated section (A.R.S. § ) 12–820.01.[1]

## DISCUSSION

■ When reviewing a trial court's dismissal for failure to state a claim, we must assume that all allegations of the claim are true. *Jung v. City of Phoenix*, 160 Ariz. 35, 35–36, 770 P.2d 339, 339–40 (App.1987), *mod-*ified, 160 Ariz. 38, 770 P.2d 342 (1989). We will uphold the dismissal only if plaintiff "would not be entitled to relief under any facts susceptible of proof in the stated claim." *Menendez v. Paddock Pool Constr. Co.*, 172 Ariz. 258, 261, 836 P.2d 968, 971 (App.1991). Whether defendants are entitled to immunity is a question of law which this court reviews *de novo. Carroll v. Robinson*, 178 Ariz. 453, 456, 874 P.2d 1010, 1013 (App.1994).

■ The only issue on appeal is whether the appellees are entitled to absolute immunity under A.R.S. § 12–820.01. We find they are.

In *Stone v. Arizona Highway Comm'n*, 93 Ariz. 384, 392, 381 P.2d 107, 112 (1963), the Arizona Supreme Court reversed the prior common law and abolished governmental immunity. The supreme court revisited its *Stone* decision in *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982). In *Ryan*, the court acknowledged that a total abolition of governmental immunity was not a workable solution and that some areas of immunity must remain. *Id.* at 310, 656 P.2d at 599. The court stated that immunity should be recognized for judicial and legislative functions but had difficulty defining the appropriate scope of immunity for executive functions. *Id.* at 310–11, 656 P.2d at 599–600. The court recognized that an *ad hoc* approach was the most appropriate way to determine immunity for executive functions. *Id.* at 310, 656 P.2d at 599. The court invited the legislature to intervene in the development of governmental immunity by defining which executive functions should be entitled to immunity. *Id.* at 310, 656 P.2d at 599.

The legislature responded by enacting immunity statutes in 1984. *See* A.R.S. §§ 12–820 to 12–820.05. The statutes alter the existing law of governmental immunity only "as specifically provided in this article." A.R.S. § 12–820.05(A). Therefore, for governmental immunity to apply, the conduct must be within a specific statutory exception to the rule of governmental liability. Such is the case here.

---

1. In *Noren v. State,* Cause No. CV 93–04247, judgment for appellees was entered pursuant to stipulation to allow the case to be consolidated with the two other cases in this appeal.

A.R.S. § 12–820.01 provides absolute immunity for certain governmental functions.[2] Absolute immunity is provided for the exercise of judicial or legislative functions and the exercise of administrative functions "involving the determination of fundamental governmental policy." A.R.S. § 12–820.01(A). The statute does not define what functions involve the determination of fundamental governmental policy other than to say that the function must involve the exercise of discretion. A.R.S. § 12–820.01(B). Therefore, to be entitled to absolute immunity under A.R.S. § 12–820.01(A)(2), a governmental function must involve both the determination of fundamental governmental policy and the exercise of discretion.

We first observe that the licensing and regulation of insurance involves the exercise of substantial discretion. The language of A.R.S. Title 20 gives the Director of Insurance and the Department of Insurance discretion throughout the licensing and regulatory scheme. For example, the Director of Insurance has discretion to specify standards for the valuation of an insurer's reserves, A.R.S. § 20–510(C)(2)(c) (Supp.1995), may accept an insurer's calculation of reserves, A.R.S. § 20–510(B), may require an insurer to submit statistical and financial data, A.R.S. § 20–235(C), may conduct investigations deemed proper to determine whether a person has violated any portion of A.R.S. Title 20, A.R.S. § 20–142(C), and may hold hearings for any purpose deemed necessary, A.R.S. § 20–161(A). Additionally, the courts of other states have recognized that the exercise of discretion permeates the regulation of insurance companies. *Alias Smith & Jones, Inc. v. Barnes*, 695 P.2d 302, 306 (Colo.App. 1984); *Hatcher v. Haupert*, 655 N.E.2d 1229, 1232 (Ind.App.1995); *Gerber v. Commission-*

*er of Ins.*, 242 Mont. 369, 786 P.2d 1199, 1200 (1990); *Zuber v. Department of Ins.*, 34 Ohio App.3d 42, 516 N.E.2d 244, 247 (1986); *First Nat'l Bank v. Pennsylvania*, 102 Pa.Cmwlth. 474, 518 A.2d 871, 873 (1986).

However, a finding of discretion, alone, is not sufficient to provide absolute immunity. The act must also include the determination of fundamental governmental policy. The statutory language provides courts with little guidance in making this determination.

The history of A.R.S. § 12–820.01 likewise provides little direct guidance for the determination of what constitutes determination of fundamental governmental policy. The language of A.R.S. § 12–820.01 was patterned after Restatement (Second) of Torts § 895B. The comments to the Restatement note that the rule "expresses a standard rather than a precise rule and does little more than to offer guidelines for a court." Restatement (Second) of Torts § 895B cmt. d. The commission that drafted A.R.S. § 12–820.01 expressed an intent to allow courts to make case-by-case determinations of whether absolute immunity applies to specific administrative functions. In its report, the commission states that it is necessary that situations involving the determination of fundamental governmental policy "be identified by the courts as they arise." Governor's Commission on Governmental Tort Liability, *Arizona Governmental Tort Claims Act*, at 11–12 (filed Dec. 16, 1983). The commission further stated that the "purpose of the immunity is 'to insure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government'" where the policy decision involves "consciously balancing risks and advantages." *Id.* at 12 (quoting Restatement (Second) of Torts

**2.** A.R.S. § 12–820.01 provides:

**A.** A public entity shall not be liable for acts and omissions of its employees constituting:
1. The exercise of a judicial or legislative function; or
2. The exercise of an administrative function involving the determination of fundamental governmental policy.
**B.** The determination of a fundamental governmental policy involves the exercise of discretion and shall include, but is not limited to:

1. A determination of whether to seek or whether to provide the resources necessary for:
(a) The purchase of equipment,
(b) The construction or maintenance of facilities,
(c) The hiring of personnel, or
(d) The provision of governmental services.
2. A determination of whether and how to spend existing resources, including those allocated for equipment, facilities and personnel.
3. The licensing and regulation of any profession or occupation.

§ 895B cmt. d). The courts should avoid making "a policy decision that is better left to the administrative officials." *Id.*

The administrative acts in this case involve policy decisions that should be reserved for administrative officials. The decision to license a particular insurance company entails considerably more than a low-level bureaucratic determination that the company meets a list of static requirements. Instead, the decision requires reliance upon the judgment and expertise of administrative officials to determine whether the applicant company is fit to conduct business in Arizona. This is the precise type of policy decision that courts should leave to administrative officials.

█ The legislature provides additional guidance by providing examples of administrative functions that involve the determination of fundamental governmental policy. *Evenstad v. State,* 178 Ariz. 578, 583, 875 P.2d 811, 816 (App.1993). A.R.S. § 12–820.01(B) provides a list of government functions that the legislature has determined, by definition, involve the determination of fundamental governmental policy. *Bird v. State,* 170 Ariz. 20, 23, 821 P.2d 287, 290 (App.1991). The language of the statute specifically notes that this list is not exclusive. A.R.S. § 12–820.01(B); *Evenstad,* 178 Ariz. at 583, 875 P.2d at 816. A non-enumerated governmental function may be entitled to absolute immunity if similar in nature and quality to an enumerated function. *See Evenstad,* 178 Ariz. at 583, 875 P.2d at 816.

In *Evenstad,* this court was asked to decide whether the Motor Vehicle Department (MVD) was absolutely immune when promulgating rules and regulations to enforce laws. *Id.* at 582, 875 P.2d at 815. Like the regulation of insurance, promulgation of rules and regulations is not specifically enumerated in A.R.S. § 12–820.01. The court then compared the promulgation of rules and regulations to the enumerated functions. The court held the promulgation of rules and regulations was similar to two enumerated functions: determining whether to seek or provide resources, A.R.S. § 12–820.01(B)(1), and determining whether and how to spend existing resources, A.R.S. § 12–820.01(B)(2). *Evenstad,* 178 Ariz. at 583, 875 P.2d at 816.

Because of the similar nature of the functions, the court held the MVD was protected by absolute immunity when promulgating rules and regulations. *Id.* at 586, 875 P.2d at 819.

The same analysis is helpful in this case. The licensing and regulation of insurance is similar in nature and quality to the enumerated function, "[t]he licensing and regulation of any profession or occupation." A.R.S. § 12–820.01(B)(3). The licensing and regulation of insurance involves similar policy considerations and determinations. Initially, both the regulation of insurance and the regulation of professions and occupations are done to protect the citizens of the state. *Compare* A.R.S. § 32–101(A) *with* A.R.S. § 20–101 (Historical and Statutory Notes). Additionally, the regulation of insurance and the regulation of professions and occupations both require attainment of minimum quality standards, training, and financial responsibility. In both areas, the administrative decisions involved in the licensing or regulation require specialized knowledge of the underlying industry or profession.

Finding that insurance regulation does not involve the determination of fundamental governmental policy would render meaningless the legislature's language that the enumerated functions of A.R.S. § 12–820.01(B) are not exclusive. If regulation of one of the largest and most far-reaching industries in the state fails to involve the determination of fundamental governmental policy, what non-enumerated administrative functions could possibly be entitled to immunity protection? It would be anomalous to insulate administrative officials from errors made in carrying out minor licensing decisions, such as those involved in the licensing of barbers and security guards, while leaving exposure for errors made in regulating one of the state's largest, most pervasive industries.

Appellants argue that because they have alleged appellees acted with gross negligence, appellees are not protected by the qualified immunity provided by A.R.S. § 12–820.02. Appellants' claim is controlled by A.R.S. § 12–820.02(5) which provides qualified immunity to public entities or employees for "[t]he issuance of or failure to revoke or

suspend any permit, license, certificate, approval, order or similar authorization *for which absolute immunity is not provided pursuant to § 12–820.01.*" (Emphasis added.) This section, therefore, applies only to acts for which absolute immunity is not provided. Because we believe that A.R.S. § 12–820.01 provides absolute immunity for appellees, appellees are not liable under A.R.S. § 12–820.02(5) for their alleged gross negligence in granting and failing to revoke AMS's certificate to conduct insurance.

## CONCLUSION

We hold that A.R.S. § 12–820.01 affords absolute immunity for the licensing and regulation of insurance. The act of licensing and regulating insurance is an administrative act that involves both the exercise of discretion and the determination of fundamental governmental policy.

We affirm.

TOCI, J., concurs.

FIDEL, Judge, dissenting.

The majority observes that "licensing and regulation of insurance involves the exercise of substantial discretion." As a general proposition, I agree. But the precise licensing decision in question—whether to permit an insurance company that did not meet statutory solvency requirements to write insurance in Arizona—did not require or receive the exercise of discretion. The Department of Insurance simply failed to take notice of, and act upon, determinative facts. Further, even when the Department exercises licensing discretion over insurers, it does not engage in *policy* determination. For both these reasons, I would not extend the Department absolute immunity for its omissions in this case.

## I. DISCRETION

Absolute immunity is reserved in Arizona, under our governmental tort claims statute, A.R.S. § 12–820 *et seq.,* for "exercise of a judicial or legislative function," A.R.S. § 12–820.01(A)(1), and "exercise of an administrative function involving the determination of fundamental governmental policy," A.R.S.

§ 12–820.01(A)(2). In A.R.S. § 12–820.01(B), the legislature identified an attribute of the latter: "the determination of a fundamental governmental policy involves the exercise of discretion...." The legislature did not elaborate, however, on the function of this criterion. I would do so in this case.

The majority acknowledges that availability of discretion does not suffice to establish an administrative function as one involving the determination of fundamental governmental policy. The legislature could not have intended, by identifying the criterion of discretion in subsection 12–820.01(B), to establish every administrative function that involves discretion as one that involves determination of fundamental governmental policy. If this were true, absolute immunity would blanket virtually every area of government, contrary to our legislature's declared intent.

We recently observed that the governmental tort claims statute of 1984 was intended to "reaffirm[ ] and codify[ ]" our supreme court's declaration in *Ryan v. State,* 134 Ariz. 308, 309, 656 P.2d 597, 598 (1982), that "the rule is liability and immunity is the exception" for injuries caused by the negligence of an Arizona public entity or employee. *Warrington v. Tempe Elementary School Dist. No. 3,* 187 Ariz. 249, 251, 928 P.2d 673, 675 (App.1996); *see also Schabel v. Deer Valley Unified School Dist. No. 97,* 186 Ariz. 161, 164, 920 P.2d 41, 44 (App.1996). The legislature supported this characterization in a prefatory statement of "Legislative Purpose and Intent" to the governmental tort claims act. *See* 1984 Ariz.Sess.Laws ch. 285, § 1, *cited in* A.R.S. § 12–820 (1992) (historical note). The legislature observed that some degree of sovereign immunity is necessary to assure that government is not obliged "to do everything that might be done." *Id.* But the legislature presented immunity as the exception, not the rule, declaring it "the public policy of this state that public entities are liable for acts and omissions of employees in accordance with the statutes and common law of this state." *Id.* The legislature instructed that the provisions of the act "should be construed with a view to carry out

the above legislative purpose." *Id.* Given this directive, we should construe immunity provisions narrowly, not broadly, "with a view to finding immunity only if it clearly applies." *Schabel,* 186 Ariz. at 189, 920 P.2d at 44.

Yet, as noted, the legislature extended absolute immunity to "exercise of a judicial or legislative function," A.R.S. § 12–820.01(A)(1), and "exercise of an administrative function involving the determination of fundamental governmental policy," A.R.S. § 12–820.01(A)(2). Thus, if the legislature truly intended immunity of public entities and employees to be the exception and not the rule, it must have envisioned a wide range of administrative acts that do not involve fundamental policy determinations.

Nor could the legislature have regarded every discretionary administrative function as one involving fundamental policy determinations. Other sections of the statute make that clear. In section 12–820.02, for example, the legislature listed a series of acts protected only by qualified, not absolute, immunity. Among these acts are "failure to make an arrest," "failure to retain an arrested person in custody," and release of a prisoner on probation, community supervision, or discharge. A.R.S. § 12–820.02(1) and (3). Each of these acts involves the exercise of discretion; none is extended absolute immunity. It follows that discretion alone does not establish an act as one involving fundamental governmental policy.

What then does subsection 12–820.01(B) mean by isolating discretion as a feature of a fundamental governmental policy determination? In my judgment, subsection 12–820.01(B) articulates a *minimum* attribute—a necessary but insufficient attribute—of a fundamental policy determination. As this court stated in *Goss v. City of Globe,* "[B]efore immunity attaches there must be some form of 'considered' decision, that is, 'one which consciously balances risks and advantages.'" 180 Ariz. 229, 231, 883 P.2d 466, 468 (App.1994) (quoting *Department of Transp. v. Neilson,* 419 So.2d 1071, 1080 (Fla.1982) (Sundberg, J., dissenting)). If the act in question does not entail a "considered" or discretionary decision, the court need look no further. Only if the act meets this threshold standard does the court inquire whether the discretionary decision rises to the level of a fundamental policy determination.

We come then to the case at hand. If the Department had exercised discretion in redomesticating and renewing AMS as an approved insurer in Arizona, it would be necessary to determine whether these decisions amounted to fundamental governmental policy determinations. But because AMS's applications neither invoked nor received the discretionary judgment of the Department, we need never reach that question.

If AMS had been solvent—*if it had even arguably met the statutory requirements to write insurance in Arizona*—AMS would indeed have invoked the Department's discretion when it sought to redomesticate in 1988 and later to renew its license. The appellants allege, however, that the Department approved AMS's applications "with knowledge that AMS Life did not meet the Arizona statutory solvency requirements." And as this case was resolved by motion to dismiss, we must therefore accept as given that the Department knowingly approved an unqualified insurer. *See Gatecliff v. Great Republic Life Ins. Co.,* 154 Ariz. 502, 508, 744 P.2d 29, 35 (App.1987) ("When a complaint is the target of a rule 12(b)(6) motion, the court must assume the truth of all of the complaint's material allegations . . . .").

The Department argues, however, that it had discretion to overlook AMS's violation of statutory solvency requirements. The Department invokes the permissive language of A.R.S. § 20–220, which provides:

> A. The director may after a hearing refuse to renew or *may* revoke or suspend an insurer's certificate of authority, in addition to other grounds therefor in this title, if the insurer:
>
> . . . .
>
> 3. Is found by the director to be in *unsound condition or in such condition as to render its further transaction of insur-*

ance in this state hazardous to its policy-holders or to the people of this state.

*Id.* (emphasis added).

In my judgment, the Department invokes the wrong statute. There is a limit to the Director's discretion to overlook an insurer's unsound condition. That limit is contained in A.R.S. § 20–219, which provides:

The director *shall* refuse to renew or shall revoke or suspend an insurer's certificate of authority:

. . . .

2. If the insurer no longer meets the requirements for the authority originally granted, on account of deficiency in assets or otherwise.

*Id.* (emphasis added). The title of section 20–219 is "Mandatory revocation or suspension." Under this statute the Department lacked discretion to approve the applications of AMS. *See id.*

To summarize, although I do not contest that insurance licensing decisions sometimes involve the exercise of substantial discretion, the threshold question under subsection 12–820.01(B) is whether the Department was engaged in the affirmative exercise of discretion when it took the course of action that is challenged in this case. *See Schabel,* 186 Ariz. at 165, 920 P.2d at 45, ("[Section] 12–820.01 does not 'immunize a public entity from . . . non-decisions but only from actual decisions and the affirmative exercise of discretion. . . .' [*Goss,* 180 Ariz. at 231, 883 P.2d at 468.]"). And in my opinion, when the Department neglected its obligation to deny AMS's applications for redomestication and renewal, it was neither affirmatively exercising discretion, nor making a judgment call of any sort. To overlook the uncontested insolvency of AMS was merely an act of sleeping at the switch, which does not meet the

threshold "exercise of discretion" test for absolute immunity under section 12–820.01.

## II. POLICY

Even, however, if AMS's application had invoked a discretionary judgment on the part of the Department, I would not agree that licensing insurers involves a fundamental governmental policy determination. The majority reasons, "If regulation of one of the largest and most far-reaching industries in the state fails to involve the determination of fundamental policy, what non-enumerated administrative functions could possibly be entitled to immunity protection?" I do not find this reasoning persuasive. The magnitude or importance of an agency's general responsibilities does not establish the agency's entitlement to absolute immunity. If a governmental agency lacked important public business to perform, presumably the legislature would shut it down. Most agencies can demonstrate responsibilities comparable in public importance to the regulation of insurance and equally dependent upon specialized knowledge.[3] Yet immunity for public agencies remains the exception, not the rule. *Ryan,* 134 Ariz. at 309, 656 P.2d at 598; *Warrington,* 187 Ariz. at 251, 928 P.2d at 675.

This point is illustrated by *Warrington,* in which we rejected an elementary school district's assertion of absolute immunity for the dangerous placement of a school bus stop. 187 Ariz. at 250, 928 P.2d at 674. Though the placement of school bus stops requires substantial experience and discretion, these factors did not resolve the case. Nor did it resolve the case to recognize that "designation of school bus stops is an essential governmental function." *Id.* at 252, 928 P.2d at 676. Instead we recognized that a public employee can exercise substantial discretion in the performance of an essential governmental function without engaging in a fundamental *policy* determination:

Placement of the school bus stop in this case did not involve District policy decisions on whether to provide transportation services, how to spend money, or how to

---

3. Moreover, the majority assumes facts not in evidence when it surmises, "The decision to license a particular insurance company entails considerably more than a low-level bureaucratic determination that the company meets a list of static requirements." The record in this case is barren of any description of the ordinary departmental screening process—high-level, low-level, or otherwise—for redomestication of an insurer.

allocate resources; it involved one employee's decision whether to place a bus stop at one point or another. This is an operational decision, not a fundamental policy decision.

*Id; see also Schabel,* 186 Ariz. at 166, 920 P.2d at 46 (Immunity under section 12–820.01(B) "extends to determinations at a policy-making level rather than an operational level").

*Warrington* and *Schabel* are not the first Arizona opinions to contrast operational decisions with policy decisions. Our supreme court noted the distinction in dicta in *Ryan,* 134 Ariz. at 311, 656 P.2d at 600, and in *Grimm v. Arizona Bd. of Pardons & Paroles,* 115 Ariz. 260, 265, 564 P.2d 1227, 1232 (1977); and this court applied the distinction dispositively in *Evenstad v. State,* 178 Ariz. 578, 582–83, 875 P.2d 811, 815–16 (App.1993). In *Evenstad,* the Motor Vehicle Division ("MVD") had neglected to promulgate regulations implementing A.R.S. § 28–413(A)(4), a statute that prohibited issuing a driver's license to an "habitual drunkard." 178 Ariz. at 580, 875 P.2d at 813. Because issuing regulations does require policy-making, we decided that the MVD was entitled to absolute, not qualified, immunity for injury claims that resulted from its failure to make rules. *Id.* at 584, 875 P.2d at 817. We contrasted the MVD's licensing decisions, however, as operational decisions that would be entitled only to qualified, not absolute immunity. *Id.* at 584–85, 875 P.2d at 817–18.

Our *Evenstad* distinction between rule-making and licensing should guide our decision in this case. When the Department of Insurance engages in "regulation of one of the largest and most far-reaching industries in the state," to quote the majority once again, the Department sometimes makes the rules and sometimes applies them through licensing decisions. Under A.R.S. § 20–220(C) (1995), for example, the director of the Department "may adopt rules to provide the criteria to be used for identifying insurers who are found to be in a condition that would render the continuance of their business hazardous to their policyholders or the people of this state." If this case concerned a failure to adopt such rules, I would agree that the Department would be absolutely immune from suit. But in applying the rules through licensing decisions, the Department engages in operational decision-making, not policy-making. And as indicated in *Evenstad, Warrington,* and *Schabel,* operational decision-making does not qualify for absolute immunity.

To distinguish rule-making from licensing exposes a statutory anomaly, however, as the majority points out and as the *Evenstad* court recognized. *See Evenstad,* 178 Ariz. at 584 n. 4, 875 P.2d at 817 n. 4. The legislature has statutorily declared one form of licensing and regulation to entail the determination of a fundamental governmental policy—specifically, the "licensing and regulation of any profession or occupation." A.R.S. § 12–820.01(B)(3).[4] Pressing this point, the majority observes that insurance licensing and regulation involves administrative judgments of comparable or greater magnitude than the judgments required of agencies that license barbers or security guards. Accordingly, the majority reasons, the legislature must have intended insurance licensing and regulation for absolute immunity as well.

I accept the majority's comparative assessment, but not its conclusion. The legislature preemptively granted absolute immunity to several governmental functions in subsection 12–820.01(B)—among them, the licensing of professions and occupations. This broad preemptive classification has puzzling applications. It is difficult, expanding the majority's example, to appreciate why the legislature attributed a greater component of policy-making to the licensing of barbers than to the release of arrestees or convicts from criminal confinement. Yet the legislature found the former deserving of absolute immunity and declared the latter

---

4. The court has not accepted the Department's argument that licensing of an insurance company constitutes the licensing of a profession or occupation. If we had done so, this case would be preemptively resolved. To act as an insurance *agent* is to engage in a profession or occupation. To act as an *insurance company* is not to engage in a profession or occupation but to engage in the "transaction of insurance business." A.R.S., Title 20, Chapter 2.

only qualifiedly immune. *Compare* A.R.S. § 12–820.01(B) *with* § 12–820.02.

Such anomalies within the statute demonstrate, in my judgment, that we cannot effectively apply the "fundamental governmental policy" standard by examining whether the particular decision in question has greater or lesser importance than a type of decision singled out for absolute immunity within subsection 12–820.01(B). Rather, we must accept as merely preemptive, not exemplary, the categories listed there. As for the great remainder of administrative functions, the drafters of our governmental tort claims act intended for situations that involve fundamental governmental policy to "be identified by the courts as they arise." Governor's Commission on Governmental Tort Liability, *Arizona Governmental Tort Claims Act*, at 11 (filed Dec. 16, 1983), *quoted in Evenstad*, 178 Ariz. at 583, 875 P.2d at 816. In performing that function, we should take care to give the words "fundamental governmental policy" their ordinary meaning. And doing so, we should conclude that the Department was not engaged in any form of policy-making, fundamental or otherwise.

Finally, I would point out that the legislature itself acknowledged within the governmental tort liability statute that it had granted exceptional status to the licensing of professions and occupations. In A.R.S. § 12–820.02(5), the legislature extended only qualified, not absolute, immunity to "the issuance of or failure to revoke or suspend any permit, license, certificate, approval, order or similar authorization for which absolute immunity is not provided pursuant to § 12–820.01." The only form of licensing singled out for absolute immunity in section 12–820.01 is the licensing of professions and occupations—a category that does not include this case.

In summary, because the Department was not engaged in licensing of professions and occupations, because it was not engaged in fundamental governmental policy-making, and because it was not engaged in the exercise of discretion of any form, the trial court erred in awarding it absolute immunity.

From the majority's contrary decision, I respectfully dissent.