IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

---

JENNIFER MONROE, A SINGLE WOMAN,
*Plaintiff/Appellant,*

*v.*

BASIS SCHOOL, INC., AN ARIZONA CORPORATION,
*Defendant/Appellee.*

No. 2 CA-CV 2013-0047
Filed February 10, 2014

---

Appeal from the Superior Court in Pima County
No. C20115339
The Honorable Jan E. Kearney, Judge

**AFFIRMED**

---

COUNSEL

Monroe McDonough Goldschmidt & Molla, P.L.L.C., Tucson
By Karl E. MacOmber
*Counsel for Plaintiff/Appellant*

Grasso Law Firm, P.C., Chandler
By Robert Grasso, Jr. and Kim S. Alvarado
*Counsel for Defendant/Appellee*

---

**OPINION**

Judge Miller authored the opinion of the Court, in which Presiding
Judge Vásquez and Chief Judge Howard concurred.

---

M I L L E R, Judge:

¶1        Jennifer Monroe appeals from the judgment dismissing her negligence action against BASIS School, Inc.   This appeal requires us to determine whether a charter school has a duty of care to its students as they travel to and from school.   The trial court found BASIS owed no duty to Monroe and, even assuming a duty, there had been no breach.   Because we agree BASIS did not owe a duty to Monroe, we affirm.

## Factual and Procedural Background

¶2        The following facts are undisputed.   On October 17, 2003, Monroe, then an eleven-year-old, fifth-grade student at BASIS, a charter school, was struck by a truck in a busy intersection crosswalk as she rode her bicycle from the school to her home.   As a result of the accident, Monroe was in a coma for two weeks and suffered permanent injury.   The intersection where the accident occurred is located approximately one block from BASIS.   The intersection was equipped with marked crosswalks and traffic lights, including a walk/don't walk pedestrian light and left turn arrow.   No crossing guards were present at the intersection.

¶3        Monroe filed her complaint after her eighteenth birthday, claiming BASIS had been negligent for failing to post a crossing guard at the intersection.   Although not alleged in her complaint, Monroe also contends that BASIS negligently located its school in close proximity to the subject intersection.   BASIS moved for summary judgment on the basis of duty.[1]   The trial court granted the motion finding that BASIS owed no common law or statutory duty to Monroe.   Monroe timely appealed, and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

---

        [1]BASIS also moved to exclude the testimony of Monroe's expert, which the trial court granted for purposes of the summary judgment motion.   Because we affirm on other grounds, we do not address this issue or the court's finding that there were no issues of material fact.

**Discussion**

**¶4**        Monroe contends that BASIS owed a duty to protect her from an unreasonable risk of harm on her way from the school to her final destination. Whether a duty exists "is a matter of law for the court to decide," while the remaining elements are factual issues typically decided by the jury. *Gipson v. Kasey*, 214 Ariz. 141, ¶ 9, 150 P.3d 228, 230 (2007). Duty is defined as a legal obligation that requires a defendant "to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985). "Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained." *Gipson*, 214 Ariz. 141, ¶ 11, 150 P.3d at 230. Accordingly, when no duty exists, a defendant cannot be found liable. *See Markowitz*, 146 Ariz. at 356, 706 P.2d at 368.

**Does the Student-School Relationship Impose a Duty To Students Traveling To and From School?**

**¶5**        A duty of care may arise from the relationship between the parties. *See Stanley v. McCarver*, 208 Ariz. 219, ¶ 7, 92 P.3d 849, 851 (2004) (duty may arise from special relationship between parties, based in contract, family relations, or joint undertakings). The student-school relationship is one that can impose a duty within the context of the relationship. *Hill v. Safford Unified Sch. Dist.*, 191 Ariz. 110, 112, 952 P.2d 754, 756 (App. 1997); *see also Gipson*, 214 Ariz. 141, ¶ 19, 150 P.3d at 232; Restatement (Third) of Torts (Physical and Emotional Harm) § 40 (2012) (special relationships giving rise to a duty include a school with its students). Schools have "both a statutory and common law duty not to subject students within their charge to a[n] . . . unreasonable risk of harm through acts, omissions, or school policy." *Hill*, 191 Ariz. at 112, 952 P.2d at 756; *see also* A.R.S. § 15-341(A)(16) (governing board shall provide for adequate supervision of pupils in instructional and non-instructional activities).

**¶6**        The scope of the duty imposed by the student-school relationship is not limitless. *See Hill*, 191 Ariz. at 112, 952 P.2d at 756

(school owes duty to students within its charge); Restatement § 40 cmt. f (duty arising within and confined by relationship does not extend to risks outside relationship). "The relationship between a school and its students parallels aspects of several other special relationships—it is a custodian of students, it is a land possessor who opens the premises to a significant public population, and it acts partially in the place of parents." Restatement § 40 cmt. *l*. Where a duty arises from a special relationship, the duty is tied to expected activities within the relationship. *Id.* Therefore, in the student-school relationship, the duty of care is bounded by geography and time, encompassing risks such as those that occur while the student is at school or otherwise under the school's control.[2] Restatement § 40(b)(5) and cmt. f, *l*; *see also Norton v. Canandaigua City Sch. Dist.*, 624 N.Y.S.2d 695, 697 (N.Y. App. Div. 1995) (school's duty to student strictly limited by time and space and student-school relationship "exists only so long as a student is in its care and custody during school hours," terminating when child has departed from school's custody); *Young v. Salt Lake City Sch. Dist.*, 52 P.3d 1230, ¶ 14 (Utah 2002) (extent of student-school relationship limited to school's custody over that student).

¶7        It is the general rule that "absent a statute to the contrary or an undertak[ing] specifically assumed, an educational institution has no duty 'to conduct or supervise school children in going to or from their homes.'" 5 James M. Rapp, *Education Law*, § 12.10[5], at 12-296.5 (2013), *quoting Gilbert v. Sacramento Unified Sch. Dist.*, 65 Cal. Rptr. 913, 916 (Ct. App. 1968); *see also Wright v. Arcade Sch. Dist.*, 40 Cal. Rptr. 812, 813-16 (Ct. App. 1964) (holding no common law duty to transport pupils between home and school and

---

[2]This does not mean that a school never has a duty to protect its students beyond the school's physical boundaries or outside of normal school hours. *See, e.g., Delbridge v. Maricopa Cnty. Cmty. College Dist.*, 182 Ariz. 55, 59, 893 P.2d 55, 59 (App. 1994) (school owed duty to student injured in off-campus accident where student was performing exercise supervised by school instructor and included in curriculum).

thus school district had no duty to pupil injured crossing busy intersection on way to school). Based on this general principle, a school has no affirmative, common law duty to provide school crossing guards. 5 Rapp, *supra*, § 12.10[5]; *see also Young*, 52 P.3d 1230, ¶ 16 (concluding school district had no common law duty to provide crossing guard at crosswalk located opposite school).

¶8 Arizona law recognizes, however, that if a school voluntarily undertakes to provide protection at a street crossing, a duty of care is imposed on that conduct. For instance, in *Alhambra School District v. Superior Court*, 165 Ariz. 38, 796 P.2d 470 (1990), our supreme court considered a school district's affirmative duty to persons using a school crosswalk. By establishing a "marked crosswalk where none previously existed, the District created a relationship with those who would use the crosswalk and thereby assumed a duty of reasonable care with respect to its operation." *Id.* at 42, 796 P.2d at 474. Thus, the school owed a duty of reasonable care to any pedestrian who used the crosswalk, not just its students. *See id.* at 43, 796 P.2d at 475. Similarly, the Attorney General relied on *Alhambra* when opining that although schools do not have "blanket 'portal-to-portal' liability," affirmative action by the school may create a relationship that could establish a duty.[3] 1994 Op. Ariz. Att'y Gen. I94-001.

¶9 Here, Monroe left BASIS's custody to travel from the school to her home. Because BASIS did not have custody, it did not have a protective obligation and lacked the special, student-school relationship with Monroe after she left the school. *See Young*, 52 P.3d 1230, ¶ 16 ("Given that the [school district] did not have custody of [the student] at the time he suffered his injury, it lacked a special relationship with him at that time."); *Pratt v. Robinson*, 349 N.E.2d 849, 853 (school district lacked custody once it safely dropped off student at bus stop just as it would if "the child had

---

[3]Although Attorney General Opinions are advisory only, *Marston's Inc. v. Roman Catholic Church of Phoenix*, 132 Ariz. 90, 94, 644 P.2d 244, 248 (1982), they may be persuasive, *Neary v. Frantz*, 141 Ariz. 171, 176, 685 P.2d 1323, 1328 (App. 1984).

been hurt while walking home from a neighborhood school"). Moreover, BASIS did not undertake any affirmative action regarding crosswalks or crossing guards at the subject intersection. *See* 5 Rapp, *supra*, § 12.10[5], at 12-296.5; *cf. Alhambra*, 165 Ariz. at 42, 796 P.2d at 474 (creation of marked crosswalk created relationship between school district and all potential crosswalk users). Thus, BASIS did not owe a duty of care to protect Monroe traveling to and from school.

¶10        Monroe also contends that the school's proximity to a busy intersection rendered its location[4] dangerous to elementary students and that, as a result, BASIS had a duty to provide a crossing guard at the subject intersection. In support of this argument, Monroe relies on *Warrington v. Tempe Elementary School District No. 3*, 187 Ariz. 249, 926 P.2d 673 (App. 1996); *see also Warrington v. Tempe Elementary Sch. Dist. No. 3*, 197 Ariz. 68, ¶ 9, 3 P.3d 988, 990 (App. 1999) ("*Warrington II*"). In *Warrington*, this court considered a school's affirmative duty to students using school bus transportation concerning the placement of bus stops. 187 Ariz. at 250, 253, 928 P.2d at 674, 677. There, a school bus dropped off a seven-year-old student near a busy intersection and, while walking home from the bus stop, the child was seriously injured after he ran into the street and was hit by an automobile. *Id.* at 250, 928 P.2d at 674. The court's analysis focused on whether school bus stop placement involved a fundamental governmental policy determination and therefore was subject to absolute immunity under A.R.S. § 12-820.01(B), which bars tort liability for public entities. *Id.* at 253, 928 P.2d at 677. Because placement of bus stops was part of the day-to-day performance of the school district's

---

[4]Monroe initially argued the duty BASIS owed to Monroe in selecting a school location is identical to that owed to the injured student in *Warrington v. Tempe Elementary School District No. 3*, 187 Ariz. 249, 926 P.2d 673 (App. 1996) in its choice of bus stops. At oral argument, however, counsel clarified that the school location was secondary to Monroe's principal contention based on the absence of a crossing guard.

transportation supervisor, the court concluded such a responsibility was an operational function rather than a determination of policy. *Id.* Having found no immunity, the court determined that the school district "had a duty not to subject [its] students to [an] . . . unreasonable risk of harm." *Id.* Moreover, the *Warrington II* court favorably cited common law duty decisions outside Arizona. 197 Ariz. 68, ¶ 9, 3 P.3d at 990. For instance, in *Brooks v. Woods*, 640 P.2d 1000, 1002 (Okla. Civ. App. 1981) the court concluded that school transportation was not a mandatory duty, but if the school accepted such responsibility, "it carrie[d] with it a duty to exercise reasonable judgment." *See also* Tracy A. Bateman, *Tort Liability of Public Schools and Institutions of Higher Learning for Accidents Associated with Transportation of Students*, 23 A.L.R.5th 1, § 8[a] (1994) (negligence of schools for selection of locations for bus stops).

**¶11**        We find Monroe's reliance on *Warrington* misplaced and decline to extend its holding to the facts of the case at bar. The central question before us does not concern bus stop placement nor does it involve any affirmative conduct on the part of BASIS. *Cf. Alhambra*, 165 Ariz. at 42, 796 P.2d at 474 (creation of marked crosswalk created relationship between school district and all potential crosswalk users). Rather, we are tasked with determining whether a school owes a duty of care to a student traveling to and from school when that student is not in the school's custody nor participating in a school-sponsored function. Monroe cites to no authority and we are aware of none that defines a school's common law duty so broadly.

**Is There a Statutory Duty?**

**¶12**        The existence of a duty does not necessarily depend on a preexisting or direct relationship between the parties. A duty of care also may be imposed by the requirements of a statute. *Alhambra Sch. Dist.*, 165 Ariz. at 42, 796 P.2d at 474; *see also* W. Page Keeton et al., *Prosser and Keeton on Torts* § 36, at 220-21 (5th ed. 1984) (many courts have found criminal statutes create implied intent to provide for tort liability).

¶13 BASIS is a charter school, which is defined as a public school that serves as an alternative to traditional public schools. A.R.S. § 15-181(A). Arizona statutes and regulations create, dictate, and govern the conduct of charter schools. *See* A.R.S. §§ 15-181 through 15-189. Our legislature differentiates charter schools from traditional public schools, but still requires compliance with certain rules and regulations, as reflected in the relevant portions of A.R.S. § 15-183[5]:

> E. The charter of a charter school shall ensure the following:
>
> 1. Compliance with federal, state and local rules, regulations and statutes relating to health, safety, civil rights and insurance. The department of education shall publish a list of relevant rules, regulations and statutes to notify charter schools of their responsibilities under this paragraph.
>
> . . . .
>
> 5. That, except as provided in this article and in its charter, it is exempt from all statutes and rules relating to schools, governing boards and school districts.

¶14 Monroe argues that the Arizona Department of Transportation (ADOT) manual, entitled *Traffic Safety for School Areas Guidelines* (Guidelines), are rules and regulations under § 15-183(E)(1), thereby imposing a statutory duty upon BASIS. Monroe contends the Guidelines required BASIS to consider the

---

[5]Section 15-183 has been amended nineteen times since the date of Monroe's accident. *See, e.g.*, 2013 Ariz. Sess. Laws, ch. 251, § 1 and ch. 68, § 1; 2012 Ariz. Sess. Laws, ch. 212, § 1. Unless otherwise noted, we apply the version in effect at the time of the accident. *See* 2003 Ariz. Sess. Laws, ch. 214, § 2; *Taylor v. Travelers Indem. Co. of America*, 198 Ariz. 310, n.2, 9 P.3d 1049, 1052 n.2 (2000).

proximity to arterial roadways when choosing a site and whether to post adult crossing guards at major signalized intersections. We therefore next examine whether the Guidelines constitute a "rule" or "regulation" creating a duty for BASIS under § 15-183(E)(1).

**¶15** Monroe admits the guidelines have not been implemented as a formal rule by ADOT but asserts that the Guidelines "have the force and effect of law," relying on *Griffith Energy, L.L.C. v. Arizona Department of Revenue*, 210 Ariz. 132, 108 P.3d 282 (App. 2005). Monroe's reliance on *Griffith Energy* is misplaced. There, the subject statute on tax valuation for electric generation facilities expressly directed the Arizona Department of Revenue (ADOR) to adopt tables of valuation factors to be used in the calculation. *Id.* ¶¶ 3, 12 (ADOR's adoption of table "an exercise of a legislatively mandated act"). Here, the Guidelines are published with the intent "to provide guidelines for the implementation of the [Manual on Uniform Traffic Control Devices] part VII, in accordance with ARS 28-797." Section 28-797, A.R.S., deals exclusively with school crossings, however, and nothing within the section directs ADOT to adopt rules or regulations concerning the placement of crossing guards. Additionally, the Guidelines are not referenced by § 15-183, nor were they enacted as an administrative rule pursuant to A.R.S. § 41-1001, et seq. Thus, the Guidelines' recommendations cannot be construed as rules or regulations, nor do they have the force and effect of law.

**Does Public Policy Support a Duty?**

**¶16** Having declined to recognize a duty based on the particular relationship between the parties and finding no statutory duty, we turn to public policy considerations. *See Gipson*, 214 Ariz. 141, ¶ 23, 150 P.3d at 232 ("Public policy may support the recognition of a duty of care.").

**¶17** In many instances, the legislature reflects public policy by codifying certain duties and obligations. *See Estate of Maudsley v. Meta Servs., Inc.*, 227 Ariz. 430, ¶ 21, 258 P.3d 248, 254 (App. 2011) (finding of duty supported by mental health statutes reflecting public policy that imposes obligations on entities that screen,

evaluate, and treat mentally ill); *Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 251-53, 866 P.2d 1330, 1337-39 (1994) (existence of statute criminalizing conduct one aspect of Arizona law supporting recognition of tort duty). Section 15-341, A.R.S., enumerates a wide variety of general powers belonging to the school district governing boards and duties that schools are obligated to follow. *See, e.g.*, A.R.S. § 15-341(A)(5), (21) ("[a]cquire school furniture" and "[e]stablish a bank account").[6]

**¶18** When the legislature has intended to extend the scope of duty beyond that imposed by the school-student relationship, it has done so. For instance, § 15-341(A)(14) requires schools to "[d]iscipline students for disorderly conduct on the way to and from school." The legislature could have included a similar provision governing the safety of students on the way to and from school, but has not done so. Moreover, this court distinguished a school's authority to discipline a student from the ability to supervise a student off-campus. *See Collette v. Tolleson Unified Sch. Dist., No. 214*, 203 Ariz. 359, ¶ 19, 54 P.3d 828, 833 (App. 2002) ("The ability to impose discipline after the fact is significantly different from the power to control a student's conduct before the fact."). Generally, once students independently leave school grounds, with or without permission, their actions are outside the supervisory power of school officials. *See id.* ¶ 19.

**¶19** We also note that while schools may "[p]rovide transportation or site transportation loading and unloading areas for any child or children if deemed for the best interest of the district," they are not required to do so. A.R.S. § 15-342(12).[7]

---

[6]Section 15-341 has been amended multiple times since the date of Monroe's accident. *See, e.g.*, 2013 Ariz. Sess. Laws, ch. 243, § 4; 2013 Ariz. Sess. Laws 1st Spec. Sess., ch. 3, § 6; 2012 Ariz. Sess. Laws, ch. 270, § 1. Unless otherwise noted, we apply the version in effect at the time of the accident. *See* 2003 Ariz. Sess. Laws, ch. 215, § 2; *Taylor*, 198 Ariz. 310, n.2, 9 P.3d at 1052 n.2.

[7]Section 15-342 has been amended nine times since the date of Monroe's accident. *See, e.g.*, 2013 Ariz. Sess. Laws, ch. 91, § 1; 2012

Notwithstanding that BASIS, as a charter school, is exempt from §§ 15-341 and 15-342, *see* A.R.S. § 15-183(E)(5), the absence of a requirement for traditional public schools to provide for the transportation or safety of students to and from school suggests public policy does not support the recognition of a duty of care under the circumstances.

¶20 Finally, Monroe cites no public policy authority, and we are aware of none, supporting a general duty of care against harm away from school premises, absent a school-supervised activity or a particular statute. To hold otherwise would imply that the student-school relationship extends to situations where the school lacks custody over the student and the student is not participating in a school-sponsored activity. We decline to define the scope of duty in such broad terms. *See* Restatement § 40 cmt. *l*; 5 Rapp, *supra*, § 12.10[5], at 12-296.5.

## Disposition

¶21 For all of the foregoing reasons, the trial court's judgment is affirmed.

---

Ariz. Sess. Laws, ch. 167, § 1; 2011 Ariz. Sess. Laws, ch. 344, § 12. Unless otherwise noted, we apply the version in effect at the time of the accident. *See* 2002 Ariz. Sess. Laws, ch. 316, § 2; *Taylor*, 198 Ariz. 310, n.2, 9 P.3d at 1052 n.2.