IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SAMUEL AVITIA, *Plaintiff/Appellant*,

*v.*

CRISIS PREPARATION AND RECOVERY INC, *Defendant/Appellee.*

No. 1 CA-CV 21-0083
FILED 11-8-2022

Appeal from the Superior Court in Maricopa County
Nos.  CV2016-051180
CV2017-050265
The Honorable Sally Schneider Duncan, Judge *Retired*

**AFFIRMED**

COUNSEL

McCain & Bursh Attorneys at Law, P.C., Scottsdale
By Darius O. Bursh, Marc D. McCain
*Co-Counsel for Plaintiff/Appellant*

Kennedy Kemmet PLLC, Phoenix
By Jill M. Kennedy
*Co-Counsel for Plaintiff/Appellant*

Resnick & Louis PC, Scottsdale
By Carol M. Romano, Mitchell J. Resnick
*Counsel for Defendant/Appellee*

Greenberg Traurig LLP, Phoenix
By Jon T. Neumann, Adrianna Griego Gorton
*Counsel for Intervenor*

---

**OPINION**

Presiding Judge Cynthia J. Bailey delivered the opinion of the Court, in which Judge Jennifer M. Perkins and Judge Maria Elena Cruz joined.

---

**B A I L E Y**, Judge:

¶1        Samuel Avitia, the father of infant twin boys drowned by their mother ("Mother"), filed a wrongful death suit against various defendants, including Crisis Preparation and Recovery, Inc. ("Crisis Prep"). Avitia claimed Crisis Prep's employees were in part responsible for the twins' deaths.  Finding Crisis Prep owed no duty, the superior court granted summary judgment in its favor, and Avitia appealed.

¶2        As discussed below, Crisis Prep did not owe (1) a tort duty arising under a statute to report Mother to a peace officer or the Department of Child Safety ("DCS") under Arizona Revised Statutes ("A.R.S.") section 13-3620 or (2) a duty to warn caregivers and protect the twins as "foreseeable" victims within the "zone of danger."  Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3        Avitia's twins were born in 2013.  Avitia and Mother never married and lived separately.

¶4        In accordance with a custody order, the twins were in Avitia's care half the time.  Mother lived primarily in her mother's extended-family home and, at times, in her father's apartment.  The twins were often cared for by their maternal grandmother.  Mother and her family had told Avitia that Mother had serious mental health issues, including suicidal ideations, had been hospitalized to address those issues, and that the twins were cared for by Mother's family when necessary.

¶5        Mother had suffered from mental health problems for several years, and she had been seen and treated by numerous mental health professionals.   Crisis Prep, which performs pre-petition emergent screenings of persons for court-ordered involuntary evaluation and treatment, evaluated Mother on multiple occasions.

¶6        In May 2011, Crisis Prep personnel twice sought to evaluate Mother while she was receiving mental health treatment at a behavioral

hospital, but they could not do so due to Mother's mental state and refusal to participate. In October 2013, Joanne Sanderl, a Crisis Prep licensed professional counselor, evaluated Mother and determined that she did not meet the criteria for seriously mentally ill ("SMI") status while receiving inpatient mental health treatment from another provider.

¶7            In April 2014, Mother suffered an extreme psychotic episode, and Sanderl evaluated her in an emergency room. Mother's mother told Sanderl she was "terrified" for Mother to be alone with the twins and that the family was concerned as to how she would behave with them. Sanderl advised Mother that if she did not voluntarily agree to be transferred for additional inpatient evaluation, treatment, and stabilization, Sanderl would petition for involuntary treatment. Mother then tried unsuccessfully to leave the hospital, assaulting hospital personnel in the process.

¶8            The next day, another Crisis Prep licensed professional counselor, Ann Williams, initiated the process for Mother to receive involuntary court-ordered evaluation and treatment, alleging that Mother was a danger to herself and others. Mother's mother and stepfather had told Williams that Mother had threatened to harm the twins' babysitters and, as a result, Mother's mother was caring for the twins. Mother was transferred to another provider, which petitioned for court-ordered evaluation based on allegations that she was a danger to self, a danger to others, and persistently or acutely disabled. Mother was eventually taken to a behavioral health center for evaluation and treatment.

¶9            Mother was then evaluated by several doctors and, in early May 2014, a licensed master social worker from Crisis Prep, Erin O'Toole, performed a level-of-care assessment. O'Toole noted that Mother was able to care for herself and the twins most of the time, and that when compliant with her medications she functioned well. O'Toole determined that Mother did not qualify for SMI status and instead qualified for General Mental Health Services. A Regional Behavioral Health Authority evaluator reviewing the decision disagreed, however, concluding Mother was SMI, had poor insight into her illness, needed treatment, and "[i]f left untreated she will likely have more episodes, and may be a serious risk of harm to herself and others."

¶10           A few days later, the superior court held an evidentiary hearing—at which Williams testified—on a petition for court-ordered treatment. The court found Mother was a danger to herself and persistently or acutely disabled, but not a danger to others, then ordered Mother to undergo combined inpatient and outpatient treatment until she was no

longer a danger to herself or persistently or acutely disabled. The record does not reflect that Crisis Prep employees saw or provided any professional mental health services to Mother after May 2014.

¶11 More than fifteen months later, in August 2015, Mother drowned the two-year-old twins in a bathtub after hearing voices in her head telling her to do so. She was found guilty except insane for the first degree murder of the twins and attempted murder of another family member, and she was ordered confined to the Arizona State Hospital.

¶12 One year after the twins' deaths, Avitia filed this wrongful death complaint against the state, the county, and numerous health care providers. As to Crisis Prep, Avitia's claims included negligence; medical negligence; negligent oversight, training, retention, and supervision; and respondeat superior (vicarious liability). Avitia asserted Crisis Prep had a duty to report Mother's abuse or neglect of the twins, including endangerment, and had not done so, and that Crisis Prep had also failed in a duty to warn and protect the twins.

¶13 After the completion of discovery, co-defendant Dignity Health d/b/a St. Joseph's Hospital and Medical Center ("Dignity") moved for summary judgment. Crisis Prep joined the motion, arguing (1) it had no statutory duty to report Mother to DCS or the police under A.R.S. § 13-3620 because there was no evidence that abuse or neglect had occurred; (2) there was no common law duty to warn others or protect the twins, and to the extent there was, Crisis Prep had fulfilled it by recommending inpatient mental health treatment for Mother; (3) given the length of time that passed, Avitia could show no causal link between Crisis Prep's actions and the twins' deaths; and (4) public policy considerations supported granting summary judgment.

¶14 After oral argument on the Dignity and Crisis Prep motions, the superior court granted summary judgment in favor of both defendants,[1]

---

[1] On appeal, Crisis Prep has attached as an appendix to its answering brief a copy of a reply in support of its joinder in Dignity's motion for summary judgment that is not part of the record on appeal. Crisis Prep states it filed this reply under seal on June 23, 2020, served the reply on the parties via e-mail on the same date, and it attaches correspondence showing the list of recipients. According to Crisis Prep, it is not clear why this reply is not part of the record on appeal or to what extent, if any, the superior court considered it before granting summary judgment. We gather from

explaining that "Mother was undergoing court-ordered treatment," and they had no "duty to report [M]other's condition to [DCS] or any other State agency." The court declined to reach the causation issue because its ruling was focused solely on whether the defendants owed a duty to report.

**¶15** Avitia then filed (1) a motion for reconsideration and/or clarification, and (2) an objection to Crisis Prep's notice of lodging a proposed form of judgment, both of which the superior court denied. The court then entered a partial final judgment dismissing all claims against Crisis Prep. *See* Ariz. R. Civ. P. ("Rule") 54(b).

**¶16** Avitia timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-2101(A)(1) and 12-120.21(A)(1).

## DISCUSSION

I.      Standard of Review and Applicable Law

**¶17** We review *de novo* the superior court's grant of summary judgment, construing the facts and reasonable inferences in the light most favorable to Avitia, the opposing party. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003); *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 482, ¶ 13 (2002). Summary judgment is appropriate when "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *accord Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990). We will affirm summary judgment if the superior court's ruling is correct for any reason. *Melendez v. Hallmark Ins. Co.*, 232 Ariz. 327, 330, ¶ 9 (App. 2013) (citation omitted); *Rowland v. Great States Ins. Co.*, 199 Ariz. 577, 581, ¶ 6 (App. 2001).

**¶18** To establish an Arizona common law negligence claim, a plaintiff must prove four elements: (1) a legal duty requiring the defendant to conform to a certain standard of care; (2) the defendant's breach of that duty; (3) a causal connection between the defendant's breach and the plaintiff's resulting injury; and (4) damages. *Quiroz v. ALCOA Inc.*, 243

Crisis Prep's inclusion of this item that it wishes us to consider it on appeal. We decline to do so. The reply is not part of the record on appeal, and the record does not show that Crisis Prep sought to supplement or correct the record in the superior court. *See* ARCAP 11(g)(1); *Lewis v. Oliver*, 178 Ariz. 330, 338 (App. 1993). Accordingly, we disregard it.

Ariz. 560, 563-64, ¶ 7 (2018); *Ontiveros v. Borak*, 136 Ariz. 500, 504 (1983) (citing William L. Prosser, *Handbook of the Law of Torts* § 30, at 143 (4th ed. 1971); *Wisener v. State*, 123 Ariz. 148, 149 (1979)).

**¶19**      Generally, a duty is an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 10 (2007) (quoting *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 354 (1985), *superseded by statute on other grounds as recognized in Maher v. United States*, 56 F.3d 1039, 1042 n.4 (9th Cir. 1995)). "[I]n negligence cases, the duty if it exists is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk." *Coburn v. City of Tucson*, 143 Ariz. 50, 52 (1984) (brackets omitted) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 53, at 356 (5th ed. 1984)).

**¶20**      Unlike duty, the other elements of an Arizona common law negligence claim typically are questions of fact. Thus, disputes over "what the defendant must do, or must not do" do not define duty; instead, they define the applicable standard of care. *Gipson*, 214 Ariz. at 143, ¶ 10 (brackets omitted) (quoting *Coburn*, 143 Ariz. at 52). "Whether the defendant has met the standard of care—that is, whether there has been a breach of duty—is an issue of fact that turns on the specifics of the individual case." *Id.* Such disputes generally are for the trier of fact. *See Ritchie v. Krasner*, 221 Ariz. 288, 295, ¶ 11 (App. 2009) (stating that the elements of negligence besides duty "are factual issues, and are generally within the province of the jury" (citing *Gipson*, 214 Ariz. at 143, ¶ 9)).

**¶21**      In Arizona, a defendant may be held liable "if the result would not have occurred but for defendant's conduct, even if that conduct contributed 'only a little' to plaintiff's injuries." *Ontiveros*, 136 Ariz. at 505 (quoting *Markiewicz v. Salt River Valley Water Users' Ass'n*, 118 Ariz. 329, 338 n.6 (App. 1978)).

II.      Motion for Judgment on the Pleadings

**¶22**      Avitia argues the superior court "already determined the issue of duty" in his favor when it denied an earlier motion for judgment on the pleadings filed by a co-defendant. Avitia argues we should apply the "law of the case" doctrine, *see Sholes v. Fernando*, 228 Ariz. 455, 458-59, ¶¶ 7-9 (App. 2011), to preclude Crisis Prep from arguing that no duty existed.

**¶23**      The court's ruling on that motion is not dispositive on whether summary judgment with regard to Crisis Prep—a different

party—is appropriate. Even assuming the facts relating to the co-defendant parallel those involving Crisis Prep, the legal standards for deciding a motion for judgment on the pleadings under Rule 12(c) and a motion for summary judgment under Rule 56(a) are different.

**¶24** A Rule 12(c) motion "tests the sufficiency of the complaint, and judgment should be entered for the defendant if the complaint fails to state a claim for relief." *Giles v. Hill Lewis Marce*, 195 Ariz. 358, 359, ¶ 2 (App. 1999) (citations omitted). In contrast, motions for summary judgment generally involve the parties presenting, and the court considering, additional evidentiary material beyond the allegations in the complaint, *see Workman v. Verde Wellness Ctr., Inc.*, 240 Ariz. 597, 601, ¶ 10 (App. 2016), and summary judgment is proper when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law," Ariz. R. Civ. P. 56(a). Rule 12(c) motions are resolved without reference to any discovery, while a motion for summary judgment typically is not filed until discovery is complete. *Orme Sch.*, 166 Ariz. at 309 & n.10. Thus, the superior court's ruling on a co-defendant's Rule 12(c) motion was not law of the case prohibiting entry of summary judgment for Crisis Prep.

III. Statutory Duty to Report Under A.R.S. § 13-3620

**¶25** "[D]uty in Arizona is based on either recognized common law special relationships or relationships created by public policy." *Quiroz*, 243 Ariz. at 565, ¶ 14 (citing *Guerra v. State*, 237 Ariz. 183, 187, ¶ 20 (2015); *Gipson*, 214 Ariz. at 144-45, ¶¶ 18, 23). Public policy creating a duty is based on statutes and the common law. *Id.* at ¶ 15. "A statute reflecting public policy may create a duty when a plaintiff 'is within the class of persons to be protected by the statute and the harm that occurred . . . is the risk that the statute sought to protect against.'" *Id.* (quoting *Gipson*, 214 Ariz. at 146, ¶ 26); *see also Ontiveros*, 136 Ariz. at 510 ("[A] duty of care and the attendant standard of conduct may be found in a statute silent on the issue of civil liability." (citations omitted)). State statutes are the primary source for identifying a duty based on public policy in Arizona. *Quiroz*, 243 Ariz. at 566, ¶ 18.

**¶26** Avitia notes Crisis Prep and its licensed healthcare workers had a statutory duty to report ongoing or prior child abuse or neglect to a peace officer or DCS under A.R.S. § 13-3620, and he contends the superior court erred in finding it was "not clear how [Crisis Prep] violated A.R.S. § 13-3620" and in concluding Crisis Prep had no "duty to report [M]other's condition to [DCS] or any other State agency."

¶27     Section 13-3620 requires behavioral health professionals to report child abuse or neglect to specified authorities:

> A. *Any person who reasonably believes that a minor is or has been the victim of physical injury, abuse, child abuse, a reportable offense or neglect* that appears to have been inflicted on the minor by other than accidental means or that is not explained by the available medical history as being accidental in nature . . . *shall immediately report or cause reports to be made of this information to a peace officer [or] to the department of child safety . . . .* For the purposes of this subsection, "person" means:
>
> 1. Any . . . behavioral health professional, . . . counselor or social worker who develops the reasonable belief in the course of treating a patient . . . .

(Emphasis added).  When construing a statute, we "effectuate the text if it is clear and unambiguous."  *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19, ¶ 9 (2018) (citing *State v. Burbey*, 243 Ariz. 145, 147, ¶ 7 (2017)).

¶28     Under A.R.S. § 13-3620(A), Crisis Prep personnel had a duty in April or May of 2014 to report to peace officers or DCS *if* they reasonably believed the twins were being, or had been, abused or neglected by Mother. However, Crisis Prep's contacts with Mother did not disclose any information that the twins were, or had been, victims of abuse or neglect or that Mother even made any threats to harm them.  Thus, any potential duty under § 13-3620(A) was not implicated because when Crisis Prep personnel had contact with Mother (and thereafter, until the twins' deaths), there was no abuse or neglect to report.  In fact, Avitia himself stated that before the twins' deaths, he saw no signs of abuse or neglect and believed the twins were well cared for and safe.

¶29     Avitia argues that Crisis Prep's evaluators had sufficient information at the time of their contacts with Mother from which they could have surmised that the twins might have been neglected through a lack of supervision, food, clothing, shelter, or medical care causing unreasonable risk of harm to their health or welfare, or otherwise placed in a situation where they were endangered by Mother.  *See generally* A.R.S. §§ 8-201(25)(a), 13-3620(P)(3), 13-3623(A)-(B).  Avitia's argument, however, relies on speculation that is not supported by the facts presented, and speculation is insufficient to defeat summary judgment. *Badia v. City of Casa Grande*, 195 Ariz. 349, 357, ¶ 29 (App. 1999) (citation omitted); *Menendez v. Paddock Pool Constr. Co.*, 172 Ariz. 258, 269 (App. 1991) (citing *Orme Sch.*, 166

Ariz. at 311). *See also* Ariz. R. Civ. P. 56(e) ("[A]n opposing party may not rely merely on allegations or denials of its own pleading."); *State ex rel. Corbin v. Challenge, Inc.*, 151 Ariz. 20, 26 (App. 1986) ("Conclusory statements are simply insufficient to raise any genuine issues of material fact under Rule 56(e) . . . ."). Accordingly, the superior court did not err in granting summary judgment on this issue.[2]

IV.     Common Law Duty to Warn and Protect

**¶30**     Avitia also contends that Crisis Prep had a common law duty to warn and protect foreseeable victims, including the twins, against physical harm caused by its patients.

**¶31**     Before *Gipson* and its progeny, Arizona case law "created 'some confusion and lack of clarity . . . as to what extent, if any, foreseeability issues bear on the initial legal determination of duty.'" *Gipson*, 214 Ariz. at 144, ¶ 15 (quoting *Riddle v. Ariz. Oncology Servs., Inc.*, 186 Ariz. 464, 466 n.3 (App. 1996)).

**¶32**     In *Hamman v. County of Maricopa*, 161 Ariz. 58 (1989), our supreme court relied on foreseeability to recognize a common law duty of psychiatrists to warn or protect: "When a psychiatrist determines, or under applicable professional standards reasonably should have determined, that a patient poses a serious danger of violence to others, the psychiatrist has a duty to exercise reasonable care to protect the *foreseeable victim* of that danger." *Id.* at 64 (adopting *Tarasoff v. Regents of Univ. of Cal.*, 551 P.2d 334 (Cal. 1976)). The court also held "that the duty extends to third persons whose circumstances place them within the reasonably foreseeable area of danger where the violent conduct of the patient is a threat." *Id.* at 65.

**¶33**     Later, this court recognized *Hamman* as addressing a *mental health care provider's* duty to protect others against a patient's conduct. *Little v. All Phoenix S. Cmty. Mental Health Ctr., Inc.*, 186 Ariz. 97, 101 (App. 1995). The *Little* court held that the plaintiff provided sufficient evidence to support a prima facie liability claim under *Hamman* when the mental health care providers and counselors knew or should have known that their patient "posed a serious danger of violence to others, and that [the] plaintiff was a foreseeable victim . . . and therefore was 'within the zone of danger.'" *Id.* at 103 (quoting *Hamman*, 161 Ariz. at 64) (additional citations omitted).

---

[2]     Avitia waived his argument focusing on Crisis Prep's contracts with the Arizona Department of Health Services by failing to develop it. *See Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491, ¶ 6 n.2 (App. 2007).

¶34 *Hamman* (and implicitly *Little*) relied on the special relationship between a patient and a healthcare provider, recognizing the provider took on a duty when it provided care to the patient. *See Hamman*, 161 Ariz. at 62. Both *Hamman* and *Little* then relied on foreseeability to extend the existence of a duty to others. *Hamman*, 161 Ariz. at 64-65; *Little*, 186 Ariz. at 103-05.

¶35 Subsequently, however, in *Gipson*, our supreme court expressly held "that *foreseeability is not a factor to be considered by courts when making determinations of duty, and we reject any contrary suggestion in prior opinions.*" 214 Ariz. at 144, ¶ 15 (emphasis added).

¶36 Later, in *Quiroz*, our supreme court affirmed that "foreseeability is not a factor in determining duty." 243 Ariz. at 563, ¶ 2 (citing *Gipson*, 214 Ariz. at 144, ¶ 15). The court explained that "[f]or many years, Arizona, like most jurisdictions, used foreseeability as a factor in determining duty," but "*Gipson* enacted a sea change in Arizona tort law by removing foreseeability from our duty framework." *Id.* at 564-65, ¶¶ 8, 12 (citing *Guerra*, 237 Ariz. at 185, ¶ 8; *Barkhurst v. Kingsmen of Route 66, Inc.*, 234 Ariz. 470, 475, ¶ 17 (App. 2014)). Accordingly, post-*Gipson*, to the extent prior Arizona cases relied on foreseeability to determine duty, such cases are "no longer valid." *Id.* at 565, ¶ 12 (citing *Boisson v. Ariz. Bd. of Regents*, 236 Ariz. 619, 622, ¶ 6 (App. 2015)); *Delci v. Gutierrez Trucking Co.*, 229 Ariz. 333, 336, ¶ 11 (App. 2012).

¶37 More recently, in *Dinsmoor v. City of Phoenix*, 251 Ariz. 370 (2021), our supreme court further clarified the limitations placed on the imposition of a duty. A high school student shot his girlfriend, another student, after school and while at a friend's house. *Id.* at 371-72, ¶ 1. The girl's mother sued the school district, the City of Phoenix, and various school personnel based on a duty to protect. *Id.* at 373, ¶ 11. The superior court entered summary judgment for all defendants, reasoning they owed no duty to protect the victim under the circumstances. *Id.* Our supreme court affirmed summary judgment, rejecting a duty based on the school-student relationship. *Id.* at 377, ¶ 29. Although the school-student relationship imposes an affirmative duty on a school to protect its students from unreasonable risks of harm, *id.* at 373-74, ¶ 15, such a duty is not limitless, and is instead "bounded by geography and time, encompassing risks such as those that occur while the student is at school or otherwise under the school's control," *id.* at 374, ¶¶ 17-18 (citing *Monroe v. Basis Sch., Inc.*, 234 Ariz. 155, 157-58, ¶ 6 (App. 2014)). The court explained that "[t]he key consideration is whether a known and tangible risk of harm arose that endangered the student while under the school's custody and control." *Id.*

at 376, ¶ 24 (citing Restatement (Third) of Torts: Liability for Physical Harm § 40(a) cmt. l (Am. L. Inst. 2012)). The court also rejected any argument that "effectively injects foreseeability into the duty calculus, which this Court has repeatedly cautioned against." *Id.* (citing *Quiroz*, 243 Ariz. at 563, ¶ 2; *Gipson*, 214 Ariz. at 144, ¶ 15). Consequently, through *Gipson*, *Quiroz*, and *Dinsmoor*, our supreme court has made clear that courts should not recognize a duty to others based on foreseeability.

**¶38** Of course, we recognize we have no authority to overrule *Hamman*. *See Myers v. Reeb*, 190 Ariz. 341, 342 (App. 1997) ("[W]e are bound by decisions of the Arizona Supreme Court and have no authority to overrule, modify, or disregard them . . . . Whether prior decisions of the Arizona Supreme Court are to be disaffirmed is a question for that court." (quoting *City of Phoenix v. Leroy's Liquors, Inc.*, 177 Ariz. 375, 378 (App. 1993))). But, to the extent *Hamman* and *Little* recognized a duty to other persons based solely on foreseeability, as Avitia advocates here, we question the extent of their viability given our supreme court's subsequent opinions in *Gipson*, *Quiroz*, and *Dinsmoor*.

**¶39** Here, Avitia alleges Crisis Prep assumed a duty based on a special relationship to competently evaluate Mother when she was admitted to healthcare facilities. But we cannot expand this duty into one to warn and protect others based solely on foreseeability as Avitia proposes without disregarding our supreme court's admonitions in *Gipson*, *Quiroz*, and *Dinsmoor*. Accordingly, we affirm the superior court's summary judgment based on the lack of a common law duty to warn and protect.

V.     Summary Judgment as to All Claims

**¶40** Avitia argues the superior court erred in granting summary judgment on his remaining claims—medical negligence; negligent oversight, training, retention, and supervision; and respondeat superior (vicarious liability). Crisis Prep moved for summary judgment on all claims against it, and although neither Dignity nor Crisis Prep offered any additional legal or factual basis for dismissing those claims in their motions for summary judgment, and the court provided no further explanation for granting summary judgment on those claims, the clear underlying rationale was a lack of duty, a required element of proof for each of the remaining claims. Because no duty existed, we affirm that portion of the judgment dismissing the remaining claims.

**CONCLUSION**

**¶41** Avitia did not establish that there were facts implicating a duty of care under § 13-3620. And Crisis Prep had no common law duty to warn and protect the twins as potentially foreseeable victims. We therefore affirm the superior court's summary judgment dismissing Avitia's complaint. Crisis Prep may recover its taxable costs incurred in this appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA