IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**PHOENIX UNION HIGH SCHOOL DISTRICT NO. 210,**
*Petitioner,*

*v.*

**THE HON. JOAN M. SINCLAIR, JUDGE OF THE SUPERIOR COURT OF THE
STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA,**
*Respondent,*

And

**CHRISTOPHER A. LUCERO, A MINOR CHILD, BY AND THROUGH HIS NATURAL
FATHER, CHRISTOPHER J. LUCERO,**
*Real Party in Interest.*

---

No. CV-24-0307-PR
**Filed July 15, 2025**

---

Petition for Special Action from the Superior Court in Maricopa County
The Honorable Joan M. Sinclair, Judge
No. CV2022-005719

**REVERSED AND REMANDED WITH INSTRUCTIONS**

---

Order from the Court of Appeals, Division One
1 CA-SA 24-0205
Filed December 4, 2024

**VACATED**

---

COUNSEL:

Christopher S. Welker (argued), Brett R. Steele, Richard R. Carpenter, Welker & Pauole PLC, Phoenix, Attorneys for Phoenix Union High School District No. 210

Jonathan V. O'Steen, Lincoln Combs (argued), O'Steen MacLeod Combs PLC, Phoenix, Attorneys for Real Party in Interest Christopher J. Lucero

David L. Abney, Ahwatukee Legal Office, P.C., Phoenix, Attorneys for Amicus Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

———————

CHIEF JUSTICE TIMMER authored the Opinion of the Court, in which VICE CHIEF JUSTICE LOPEZ, JUSTICES BOLICK, BEENE, MONTGOMERY, KING, and CRUZ joined.

———————

CHIEF JUSTICE TIMMER, Opinion of the Court:

¶1        Fourteen-year-old Christopher "CJ" Lucero was hit by a car and severely injured as he jaywalked across a city-owned street intending to enter his high school campus and attend classes.   We consider whether the school owed CJ a duty of care as he crossed the street to enter campus.   We hold it did not.

**BACKGROUND**

¶2        Betty H. Fairfax High School ("BFHS") is part of the Phoenix Union High School District No. 210 (the "District").   BFHS is located in Phoenix on the east side of 59th Avenue just south of West Baseline Road. On August 3, 2021, the day CJ was injured, there were no crosswalks, school zone speed limit or warning signs, or traffic lights spanning the portion of 59th Avenue that is adjacent to BFHS.   The closest traffic light and crosswalk were just north of the school at the intersection of West Baseline Road and 59th Avenue.   A vacant dirt lot owned by the City of Phoenix was located on the west side of 59th Avenue across from BFHS.   A commercial center with shops and restaurants frequently patronized by

2

students before and after school was located immediately north of the dirt lot at the southwest corner of West Baseline Road and 59th Avenue. A map depicting the area is attached as an appendix to this Opinion.

¶3 The area around BFHS was hectic as students arrived for school in the morning. In addition to students walking to school, either directly from home or after being dropped off at the commercial center, other students drove to BFHS and parked in the school parking lot located off 59th Avenue. Simultaneously, parents or other family members drove students to school. Some drivers turned into the school parking lot off 59th Avenue to drop off students. But to avoid the line of cars entering the parking lot, other drivers pulled into the dirt lot and had students jaywalk across 59th Avenue to reach the school. BFHS officials did not tell parents to drop their children off at the dirt lot, but they were aware of this practice and did nothing to stop it or warn parents or students that the practice was unsafe.

¶4 In August 2021, CJ was a freshman at BFHS. On the morning of the accident, he walked to school from his home northeast of campus. For an unknown reason, rather than staying on the east side of 59th Avenue, CJ crossed to the west side of the street and then walked south along the dirt lot.[1] When he neared a point across from school, CJ attempted to jaywalk east across 59th Avenue. Tragically, a northbound car struck him, and he suffered serious and permanent injuries.

¶5 CJ, through his father, sued the District, claiming it was liable to him under theories of negligence, gross negligence, and premises liability.[2] As the case progressed, the District moved for summary judgment, arguing it owed no duty to CJ because he was not injured by any risk arising while he was under the school's custody and control. The trial court denied the motion. It reasoned that the District was aware that students were jaywalking across 59th Avenue; that jaywalking "created a known and tangible risk of harm to those students;" and that "[t]he District had at least some control over whether to pursue safer options for students coming and going from school grounds through the [c]ity, or whether to

---

[1] CJ does not remember the accident or why he was on the west side of 59th Avenue.

[2] CJ also sued other parties. But here, we are concerned only with his claims against the District.

warn students of the traffic dangers." A divided panel of the court of appeals denied the District's petition for special action relief in an explanatory decision order.

¶6 We granted the District's subsequent petition for review because whether a school owes a duty of care to a student crossing the street with the intent to enter school grounds is an issue of first impression and of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶7 We review the trial court's denial of the District's motion for summary judgment de novo, viewing the facts in the light most favorable to CJ as the nonmoving party. *See Perez v. Circle K Convenience Stores, Inc.*, 564 P.3d 623, 626 ¶ 6 (Ariz. 2025). Summary judgment was appropriate if the District showed there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *See* Ariz. R. Civ. P. 56(a). Also, we determine the existence of a duty de novo as a legal question. *Perez*, 564 P.3d at 626 ¶ 6.

### A. General Principles

¶8 To prevail on his claims, CJ must show that the District owed him a duty to conform to a particular standard of conduct. *See id.* ¶ 7 (negligence and premises liability); *Garibay v. Johnson*, 565 P.3d 236, 246 ¶ 38 (Ariz. 2025) (gross negligence). "Duties are based either on special relationships recognized by the common law or on relationships shaped by public policy." *Perez*, 564 P.3d at 627 ¶ 7. A special relationship imposes a duty to protect against harm arising from both the actions of the individual at risk and the conduct of third parties. *See Dinsmoor v. City of Phoenix*, 251 Ariz. 370, 373 ¶ 14 (2021).

¶9 CJ argues the District owed him a duty based on the special relationship recognized at common law between schools and their students. Although people generally do not have a duty to protect others from harm, "the school-student relationship imposes an affirmative duty on schools to protect students from unreasonable risks of harm." *Id.* at 373–74 ¶ 15. The relationship "parallels aspects of several other special relationships—[the school] is a custodian of students, it is a land possessor who opens the premises to a significant public population, and it acts

4

partially in the place of parents." Restatement (Third) of Torts: Liability for Physical Harm and Emotional Harm § 40 cmt. l (Am. L. Inst. 2012), *cited with approval in Dinsmoor*, 251 Ariz. at 374 ¶ 15.

¶10 Schools do not owe a limitless duty to students. *Dinsmoor*, 251 Ariz. at 374 ¶ 17. As with all duties arising from special relationships, the duty "applies only to 'risks that arise within the scope of the relationship.'" *Id.* (quoting *Boisson v. Ariz. Bd. of Regents*, 236 Ariz. 619, 623 ¶ 10 (App. 2015)). And the school-student relationship, like other special relationships, is generally "bounded by geography and time." *Id.* (quoting Restatement § 40 cmt. f). As we explained in *Dinsmoor*:

> Because the school's roles forming the basis for the duty—custodian, land possessor, and quasi-parental figure—apply when the school supervises and controls students and their environment, enabling it to identify and eliminate risks, we are convinced the duty to protect students exists only while the school is fulfilling these roles. But once students safely leave the school's control, the special relationship ends, and students are simultaneously released to their parents' or guardians' full custodial care. At that point, the school is relieved of any duty to affirmatively protect students from any hazards they encounter.

*Id.* at 375 ¶ 20. "The key consideration is whether a known and tangible risk of harm arose that endangered the student while under the school's custody and control." *Id.* at 376 ¶ 24. Thus, we have recognized that "[i]njury generated outside the school property, outside of curricular or extra-curricular activities, and from sources unconnected to the school, is not likely to be the school's responsibility." *Id.* at 375 ¶ 22 (quoting Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 418 (2d ed. 2011)); *see also* Restatement § 40 cmt. l (commenting that the duty "is only applicable to risks that occur while the student is at school or otherwise engaged in school activities").

¶11 Notably, this Court has declined "to draw a bright-line rule barring recognition of the school-student duty whenever the student suffers harm while outside the school's supervision and control." *Dinsmoor*, 251 Ariz. at 375 ¶ 22. Indeed, "[u]nique circumstances may exist where a school has a duty to protect students from risks that arise while under school supervision and control even though such risks result in harm

when students are outside school supervision and control." *Id.* ¶ 23. For instance, "if a threat of harm exists for students leaving school for the day—an active shooter in the neighborhood or a tornado, for example—that risk arises within the school-student relationship, thereby imposing a duty on the school to protect students." *Id.* at 376 ¶ 23.

¶12 In sum, a school owes a duty to protect students when a known and tangible risk of harm endangers them while under the school's custody and control. *See id.* ¶ 24. That duty exists most often when students are injured while at school or participating in off-campus school-sponsored activities. *See id.* at 375 ¶¶ 20–22. But in rarer circumstances, the duty exists when a risk arises while a student is under a school's custody and control but manifests in injury while the student is outside the school's custody and control. *See id.* ¶ 23.

### B. Application Here

¶13 CJ argues the District owed him a duty because he was entering BFHS when he was struck and injured. He relies substantially on *Dinsmoor*, where we observed that a school has a "duty to provide a reasonably safe means of ingress and egress." *Id.* at 376 ¶ 23. He asserts the District created an unreasonably dangerous ingress and egress by permitting the ad hoc student drop-off system, which created a backup of southbound vehicles on 59th Avenue intending to turn left into the school parking lot and induced many students to jaywalk from the dirt lot to reach the school. Consequently, he contends, the District's duty to provide a safe means of ingress and egress extended to providing "a safe way" to cross 59th Avenue from the dirt lot to the school.

¶14 The District disagrees, arguing that CJ was simply "traveling to" school on a street and from a dirt lot it did not control when the car struck him, and he was therefore still outside the school's custody and control. Because the risks from traffic and jaywalking while traveling to school did not arise while CJ was under BFHS's custody and control, and thus did not arise within the school-student relationship, the District asserts it owed no duty to CJ.

¶15 To resolve this dispute, we engage in a limited review of the pertinent facts. Although we generally determine duty "before the case-specific facts are considered," *Gipson v. Casey*, 214 Ariz. 141, 145 ¶ 21 (2007) (emphasis omitted), we must consider them for the limited purpose

of "determining *when* and *where* the alleged risk of harm arose—within or outside the scope of the special relationship—not *whether* the alleged risk actually constituted an unreasonably dangerous condition," *Perez*, 564 P.3d at 628 ¶ 15 (emphasis in original). This is because, "[l]ogically, a court cannot determine whether a duty arises from such relationships unless it considers whether [an alleged risk] arose while, for example, persons were patronizing an inn, riding a bus, or . . . attending school." *Dinsmoor*, 251 Ariz. at 376–77 ¶ 27 (citing Restatement § 40(b) (listing special relationships)).

¶16 After examining the uncontested facts, we agree with the District that the risk of harm to CJ—jaywalking across busy traffic on 59th Avenue—did not arise within the school-student relationship. *See id.* at 374 ¶ 17. CJ was not under BFHS's custody and control at the time he crossed the street and was struck by the car. *See id.* ¶ 18 (describing the school-student relationship duty as "encompassing risks such as those that occur while the student is at school or otherwise under the school's control" (internal quotation marks omitted) (quoting *Monroe v. Basis Sch., Inc.*, 234 Ariz. 155, 157–58 ¶ 6 (App. 2014))). CJ had safely left the school's custody and control the day before and had not yet returned to it at the time of the accident. 59th Avenue is not on school grounds; the District did not own or control the street or the dirt lot; and the District had no authority to install crosswalks, signs, or other safety features on the street. Also, the District did not require or suggest that students access the school by crossing the street from the dirt lot. The risk to CJ arose when he chose to cross 59th Avenue outside a crosswalk.

¶17 Critically, no facts suggest BFHS failed to provide a reasonably safe means of ingress and egress. *See id.* at 376 ¶ 23. In 2021, BFHS had multiple entrances and exits for pedestrians and vehicles. Nothing about these entrances and exits created the "tangible risk of harm" that endangered CJ and resulted in his injuries. *See id.* ¶¶ 23–24. Although a risk of harm from jaywalking across traffic existed in front of the school, it existed everywhere along the routes students take from home to school. The danger arose not from the configuration of the school's entrances and exits but from the fact that crossing a street outside a crosswalk creates the risk of being hit by a car, particularly when, as here, the surrounding area is busy with parents, students, and others traveling to the school and through the area.

7

¶18 CJ places too much weight on our statement in *Dinsmoor* that "a school's duty to provide a reasonably safe means of ingress and egress does not evaporate if a student is injured off campus while trying to enter school property to attend classes." *Id.* ¶ 23. We made that statement in the context of illustrating unique circumstances where a risk arises while the student is under school supervision and control but the risk results in an off-campus injury. *See id.* Indeed, we cited *Stephens v. Bashas' Inc.*, 186 Ariz. 427, 430–31 (App. 1996), which concluded that a grocer had a duty to use reasonable care in maintaining ingress into its delivery dock to avoid causing injury to a delivering truck driver who attempted to enter the dock but was required by the dock's configuration, and told by a security guard, to park on a public street before opening his doors and backing in to unload goods. *See Dinsmoor*, 251 Ariz. at 376 ¶ 23. The risk to the driver emanated from the ingress and egress constructed by the grocer at the dock, although the injury occurred off-premises. *See Stephens*, 186 Ariz. at 431.

¶19 Here, such unique circumstances do not exist. The fact that traffic backed up on 59th Avenue due to many drivers wanting to turn left into the school parking lot did not make ingress and egress at the school unreasonably dangerous. We agree with the weight of authority holding that a landowner does not owe a duty to invitees struck by vehicles while trying to cross a public roadway to reach the landowner's premises. *See Ferreira v. Strack*, 636 A.2d 682, 686 (R.I. 1994) (collecting cases and finding that a church had no duty to control traffic on a public road crossed by churchgoers after a service). The rationale for this view is threefold: a landowner does not own an abutting road and therefore lacks the ability to control it; the landowner has no control of the vehicle that strikes a pedestrian; and it is the government's duty to protect the public while on a public road. *See id.*

¶20 We also are not persuaded that the area of 59th Avenue between the dirt lot and the school were part of the school's entrances and exits. The school's entrances and exits consisted of the areas immediately leading into and out of school property, not the streets leading to those areas. And BFHS did not affirmatively direct parents to drop students at the dirt lot, which may have imposed a duty on it to ensure reasonably safe passage for students crossing the street. *See Alhambra Sch. Dist. v. Superior Court*, 165 Ariz. 38, 42 (1990) (concluding that a school district assumed a duty of reasonable care for operating a marked crosswalk it established); *see also Warrington v. Tempe Elementary Sch. Dist. No. 3*, 187 Ariz. 249, 253 (App. 1996) (finding that a school district official had a duty to a

8

seven-year-old student who was hit by a car while walking home from a bus stop the district placed on a busy street). Also, the fact the District knew that some students jaywalked from the dirt lot to the school did not impose a duty on it to protect students from unreasonable risks of harm from crossing the street. *See Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563 ¶ 2 (2018) ("[F]oreseeability is not a factor in determining duty."); *cf. Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 144 (1982) (rejecting argument by shopping center employee, injured after attempting a shortcut exit through decorative foliage, that the owner owed her a duty because it "knew or should have known" that employees were crossing the planter; this knowledge did not bring the planter within the area of the business's invitation to the public).

¶21        Thus, we agree with the District that CJ was not *entering* BFHS at the time of the accident; he was *traveling to* a school entrance. This is a distinction with a meaningful difference. A school does not have a duty to protect students from dangers that arise when the school is not exercising custody or control over the student. *See Dinsmoor*, 251 Ariz. at 376 ¶ 24. Consequently, the general rule is that a school "has no duty to conduct or supervise school children in going to or from their homes." *Monroe*, 234 Ariz. at 158 ¶ 7 (quoting 5 James A. Rapp, *Education Law*, § 12.10[5], at 12-296.5 (Matthew Bender & Co., 2013)) (cleaned up), *cited with approval in Dinsmoor*, 251 Ariz. at 374–75 ¶¶ 18–20; *see also Young v. Salt Lake City Sch. Dist.*, 52 P.3d 1230, 1231 ¶ 3, 1233 ¶ 11 (Utah 2002) (concluding that a school did not owe a duty to a young student riding his bicycle to a school conference when he was hit by car in crosswalk adjacent to the school); *Pratt v. Robinson*, 349 N.E.2d 849, 854 (N.Y. 1976) ("We see no basis, either in statutes or common law, for the creation of a school's duty to protect its students from hazards which may [beset] them once they are on their way home and outside the control of the school."), *cited with approval in Dinsmoor*, 251 Ariz. at 374 ¶ 18.

¶22        CJ urges us to follow cases recognizing a duty owed by landowners to invitees injured while trying to enter or leave the premises. Although we agree that the landlord-invitee and school-student relationships parallel each other concerning the duty to provide a safe ingress and egress, *see Dinsmoor*, 251 Ariz. at 374 ¶ 15, we are not persuaded to reach a different decision.

¶23 The cases CJ cites are distinguishable because in each one the risk of harm arose on the landowner's premises, although the injuries occurred off-premises. As explained, *see supra* ¶ 18, the grocer in *Stephens* had a duty to the truck driver injured on the adjoining street because the driver had attempted to enter the grocer's loading dock, but the dock's configuration required him to first park on the street before backing in and unloading a delivery. *See* 186 Ariz. at 430–31. In *O'Rielly Motor Co. v. Rich*, 3 Ariz. App. 21, 23, 26 (1966), a car dealer owed a duty to a customer to provide him a suitable exit after the customer was accidentally locked inside a car dealership and was injured after jumping from an exterior fence to escape. In *Udy v. Calvary Corp.*, 162 Ariz. 7, 12 (App. 1989), the court held that a landlord owed a tenant-child, who ran into a busy road next to the unfenced premises, a duty to take reasonable precautions on the rented premises to keep the child safe. In contrast to these cases, the risk of harm to CJ did not arise from any defect on school grounds or while he was under BFHS's custody and control.

¶24 We find the circumstances here most analogous to those in *Monroe*, which we cited with approval in *Dinsmoor*. *See Dinsmoor*, 251 Ariz. at 374–75 ¶¶ 18–20. In *Monroe*, a truck struck and injured Jennifer, a fifth-grade student, in a busy intersection about a block from her school as she bicycled home. 234 Ariz. at 156–57 ¶¶ 1–2. Jennifer claimed the school was "negligent for failing to post a crossing guard at the intersection" and had "negligently located its school in close proximity to the subject intersection." *Id.* at 157 ¶ 3. The court disagreed, citing the general rule that a school has no duty to supervise children coming and going from school. *Id.* at 158 ¶¶ 7, 9. Because Jennifer had left the school's custody to travel home, the school had "[no] protective obligation and lacked the special, student-school relationship" required to find a duty, regardless of the busy intersection's close proximity to the school. *Id.* ¶ 9.

¶25 In conclusion, the trial court here mistakenly focused on the danger of jaywalking, the District's knowledge that some students jaywalked across 59th Avenue, and whether the District could have warned of the danger or sought safety measures from the city. For purposes of identifying a duty, the key question is whether the risk of harm that resulted in the accident arose while BFHS supervised and controlled CJ. *See Dinsmoor*, 251 Ariz. at 375 ¶ 23. It did not. To hold otherwise would unreasonably expand not only the school-student relationship, but the landowner-invitee relationship, too. Every business would have a duty to customers jaywalking across a public road to reach the business premises.

No authorities justify such an expansion. The trial court therefore erred by denying the District's motion for summary judgment.

**CONCLUSION**

**¶26** CJ's accident was tragic and had profound consequences. Still, the District owed no duty of care because the risk that caused his injuries did not arise within the bounds of the school-student relationship. We therefore vacate the court of appeals' decision order and reverse the trial court's order denying the District's motion for summary judgment. We remand to the trial court with instructions to enter summary judgment in favor of the District.

# APPENDIX

LUC-COP000263

